[No. 6723.   Decided June 4, 1907.]

THE STATE OF WASHINGTON, *on the Relation of Anna Tufton, Plaintiff*, v. THE SUPERIOR COURT FOR KITSAP COUNTY, *Respondent*.[1]

DIVORCE—JUDGMENT—ENTRY NUNC PRO TUNC—ESTOPPEL. A plaintiff in a divorce case, who, after oral announcement of a decree in her favor, settled her differences with her husband and requested that the decree be not entered, and three years later secured another decree of divorce making a different disposition of the property, is not entitled to have a *nunc pro tunc* order for the entry of the first decree; since such an order to correct a record is discretionary, and since she abandoned her right thereto, and third persons have acquired interests under the subsequent decree which would be injuriously affected.

SAME—ENTRY OF DECREE—WHAT CONSTITUTES. An oral announcement for a decree of divorce and disposition of property, followed by the clerk's minutes thereof, which did not state the grounds for the divorce or the disposition of the property, cannot be regarded as a decree, where written findings and a decree were prepared but not signed by the judge or entered because the parties had made up their differences and resumed their marriage relations.

Application filed in the supreme court April 10, 1907, for a writ of mandate to the superior court for Kitsap county,

[1]Reported in 90 Pac. 258.

Frater, J., to compel the signing of the findings of fact and decree entered February 4, 1903, in an action for divorce. Writ denied.

*J. W. Bryan,* for relator.

*B. B. Crawford,* for respondent.

FULLERTON, J.—This is an application for a writ of mandate. The facts upon which the application is based are in substance these: In the early part of the year 1903, the relator, who was then the wife of one L. C. Merz, began an action against her husband for a divorce. The action proceeded regularly to trial, which was had on February 4, 1903. At the conclusion of the evidence and the argument of counsel, the trial judge announced that a divorce would be granted, announcing at the time the grounds upon which the decree would be rested, and the disposition that would be made of the property of the parties. A minute of the announcement was made by the clerk and entered in the minute book; the minute, however, recorded merely that a divorce had been granted; it did not specify either the grounds on which it was granted or the disposition of the property. Counsel for appellant thereupon proceeded to draft formal written findings of fact for the judge's signature and a formal decree for entry in the journal of the court. These were prepared, served upon opposing counsel, and filed with the clerk some two days later. In the meantime, the relator and her husband had compromised their difficulties and resumed their relation of husband and wife. The relator called in a mutual friend of herself and her husband, told him she had "made up" with her husband and did not wish the decree of divorce signed, and requested him to inform the trial judge of that fact. She also notified her own counsel to the same effect. The friend consulted informed the court of the change in the status of the parties, with the result that neither the findings nor the decree were signed or spread upon the journals of the court.

Two years later the relator began another action for divorce against her husband. This action she prosecuted to a finality, the decree of divorce being entered on May 5, 1906, by a visiting judge who was called in specially to try the cause. This decree was rested upon causes of the same nature recited in the earlier findings, but a different disposition was made of the property. On November 16, 1906, the same judge was asked to sign the findings and decree prepared for signature in the first action above mentioned. This the judge refused to do, and the present proceedings were instituted to procure a writ of mandate requiring them to be signed.

The relator bases her claim to the writ on the contention that a decree of divorce was awarded her by the court on the first trial, valid and conclusive in every particular save only that formal entry thereof was not made on the record, and that now she has the right to have the decree perfected by an entry *nunc pro tunc* of the formal decree. Doubtless a court of general jurisdiction is empowered to make its records disclose what actually transpired, and when a judgment is actually pronounced, or an order actually made which for any reason is not recorded, it may, upon notice to all parties interested, cause such order or judgment to be spread upon its records as of the date when it was actually pronounced or made. But the right to have such judgment or order entered is not absolute in the party obtaining the judgment. The court can exercise a reasonable discretion in the matter; and in the exercise of this discretion, will order the judgment entered only in the furtherance of the interest of justice. If it appears that the party seeking the entry has himself been guilty of conduct that would make the entry improper, or that third persons have acquired interests or rights which will be injuriously affected by the entry, the application will be denied, and the party left to his ordinary remedies.

We think the trial judge was justified in denying the application on each of these grounds, even if it be conceded that

the act of court amounted to the rendition of a decree of divorce. The order was justified on the first ground stated for the reason that the relator, by failing to take any steps toward perfecting the decree for a period of nearly three years, knowing all the time, as she did, the condition in which the case was left, and by instituting and prosecuting to a final decree another action for the same cause, abandoned the proceedings, and estopped herself from asserting that the earlier order was a valid and binding decree. It was justified on the second ground for the reason that the last decree, by the disposition it made of the property of the parties, has created rights in third persons which would be injuriously affected by the perfection of the first decree.

But there is a stronger reason than either of these for denying the application. In this state the superior court in granting a divorce must grant it for a cause distinctly stated in the complaint, proved and found by the court, and the facts found upon which the decree is rendered must be stated. Bal. Code, § 5730 (P. C. § 4641). Although a decree, rendered upon oral findings announced from the bench by the judge, of which no record should be made, might be a valid decree under this statute, the almost uniform practice is to regard the oral announcement from the bench as merely a guide to the preparation of written findings, which, when prepared and signed, are regarded as the real findings on which the decree is based; the cause being deemed as still depending until the formal findings and decree are so prepared and signed. It is evident that the parties as well as court viewed this proceeding in that light. After the announcement was made which the relator now contends was the pronouncement of the decree, her counsel took the trouble to prepare written findings and serve them upon the opposing counsel, and the relator herself, after agreeing with her husband, sent word to the judge requesting that the decree be not signed. The judge also, instead of insisting, as he would had he deemed the cause lacking in only the formal entries, that the formal

entries be made, declined to sign the findings and decree prepared, although agreeing that they correctly set forth the findings and decree that he intended should be made and entered. These facts to our minds show conclusively that the cause was never concluded. that no decree of divorce was pronounced, and that whatever other rights the relator may now have by way of a further prosecution of the case in the court below, she has no right to have a decree entered therein *nunc pro tunc*.

The application for the writ of mandate is denied.

HADLEY, C. J., RUDKIN, CROW, ROOT, MOUNT, and DUNBAR, JJ., concur.