[No. 30098. Department Two. May 22, 1947.]

FRANKLIN CROCKETT, *as Administrator, Appellant,* v. MILES S. CROCKETT, *Respondent.*[1]

*John A. Denoo* and *Irwin & Kimball,* for appellant.

*J. P. Burson* and *G. Kent Burson,* for respondent.

[1]Reported in 181 P. (2d) 180.

JEFFERS, J. — This action was instituted by Franklin Crockett, as administrator of the estate of his mother, Fannie Crockett, deceased, against his father, Miles S. Crockett, in the superior court for Whitman county, on or about April 16, 1946.

The complaint contains eight paragraphs of what are termed general allegations. Then follow seven purported causes of action, in each of which certain paragraphs of the general allegations are referred to and by reference made a part thereof.

It was agreed between counsel in this action that the records and files in cause No. 19807, superior court records for Whitman county, being the files in a divorce action instituted by Miles Crockett against his wife, Fannie Crockett, should be considered as a part of the complaint in this action, and the court entered an order to that effect.

In the first four causes of action, plaintiff asked that the final decree of divorce entered in cause No. 19807, on March 17, 1939, wherein Miles Crockett was awarded a final decree of divorce from Fannie Crockett, be vacated, set aside, and held for naught, and that Miles Crockett be enjoined from enforcing same; that plaintiff be awarded his costs and such other and further relief as to the court might seem proper.

In the fifth cause of action, plaintiff asked that title to certain lands mentioned in the complaint be quieted, and that he be decreed to be the owner in fee simple of an undivided one-half interest in and to such real estate and personal property.

In the sixth cause of action, plaintiff asked that his father be required to account for the rents, issues, and profits from such real estate, and for the income from the livestock, since August 23, 1938.

In the seventh cause of action, plaintiff asked that he have judgment against defendant for four thousand dollars as damages for depletion of the soil and for failure to control noxious weeds.

In the second paragraph of the general allegations, it is stated that two children were born as the issue of the marriage of Miles Crockett and Fannie Crockett, namely, Franklin Crockett, plaintiff, and Ernest Crockett, both of whom are of legal age.

It is alleged in paragraph No. 8 of the general allegations:

"That Fannie Crockett, now deceased, had a good and meritorious defense to the said former action and that her personal representative, Franklin Crockett, the plaintiff in this action, has the same good and meritorious defense to said action, in this: . . .

"That said distribution [of the property made in the divorce decree] is an inequitable distribution of said property and the said terms of said judgment unlawfully and illegally deprived the decedent and the plaintiff of their lawful share of said property and of the rents, issues, and profits of said real estate, and the increases of said livestock."

It does not appear from the complaint by any affirmative allegation that Fannie Crockett died intestate, other than that Franklin Crockett is appearing in this action as her administrator.

In the decree in the divorce action, which, as stated, was made a part of the complaint in this action, Miles Crockett, in addition to being awarded a decree of divorce, was also awarded two hundred of the three hundred twenty acres of land owned by the parties, and Fannie Crockett was awarded one hundred twenty acres. The findings of fact and decree in the divorce action show that the property awarded to Fannie Crockett was encumbered with a two thousand dollar mortgage, which Miles Crockett was required to pay within three years from January 1, 1939. The findings of fact further show that Miles Crockett contributed some $5,434.21 of separate funds toward the purchase of certain real estate during the marriage of the parties, which last-named property was subsequently sold and the property which the parties owned at the time of the divorce was purchased.

It further appears from the files in the divorce proceeding that, after the complaint was filed and served upon Fannie Crockett, she then being an inmate of the hospital for the insane at Medical Lake, W. L. LaFollette, an attorney at Colfax, was by the court appointed guardian *ad litem* for Mrs. Crockett, to represent her in the divorce action. Mr. LaFollette appeared and filed an answer to the complaint, wherein he denied each and every allegation, matter, and thing contained in the complaint.

Mr. LaFollette, as such guardian *ad litem,* and counsel for Miles Crockett agreed upon a property settlement, which was submitted to the court, the agreement setting out the facts used as the basis for the settlement. At the hearing of the divorce action, at which hearing Mr. LaFollette appeared for Mrs. Crockett, and Mr. Evans, prosecuting attorney for Whitman county, appeared for the state, both of the counsel last mentioned resisting the complaint, the trial court heard testimony and thereafter made and entered findings of fact, conclusions of law, and an interlocutory decree favorable to Miles Crockett, and in the decree the court approved and adopted the property settlement as recommended, having found and concluded that, under the facts, it was a fair and equitable division of the property.

In addition to the real property set over to Miles Crockett, he was awarded a used farming outfit, three cows and their increase, one calf, five horses and their increase, three colts, five brood sows and their increase, an account receivable of four hundred dollars, household goods, and an undetermined sum in cash.

The court, in the divorce action, set out, both in the findings and in the decree, its reasons for making the division of the property which it did, which show that the court, in addition to considering the amount of separate property originally contributed by Miles Crockett, also considered that Mr. Crockett had paid the charges required of him for the transportation, maintenance, and support of his wife at the hospital at Medical Lake, and would be required to continue

such payments during the time she was so confined; that, in view of all these circumstances, Miles Crockett was awarded the property hereinbefore mentioned, and in addition he was given the use, management, and control of the real estate awarded to Fannie Crockett, together with the accruing rents, issues, and profits. Miles Crockett was, however, as stated, required to pay the two-thousand-dollar mortgage on the land awarded to his wife and to pay all taxes. It was further provided that, upon the death of Fannie Crockett, the property awarded to her should become assets of her estate.

We have set out quite fully the proceedings in the divorce action, as they form the basis for the complaint in the instant case.

Fannie Crockett was committed to Medical Lake, by order of court, on March 17, 1934. The divorce action was instituted by Miles Crockett about April 8, 1938. The interlocutory decree was signed August 23, 1938, and the final decree March 15, 1939. Fannie Crockett died at the Medical Lake hospital on January 26, 1946, and the instant case was started by Franklin Crockett, as her administrator, on April 16, 1946.

All of the matters above set out appear in the general allegations of the complaint in this action or in the divorce proceeding.

The basis of the first cause of action in the complaint now before us is that only four and one-half years elapsed between the time Fannie Crockett was confined in the hospital, under order of court, and the date of the filing of the complaint in the divorce proceeding. It was alleged that the divorce action was based on Rem. Rev. Stat., § 982 [P.P.C. § 23-1], subd. 9, which provides:

"In case of incurable, chronic mania or dementia of either spouse having existed for five years or more, while under confinement by order of a court of record, the court may, in its discretion, grant a divorce."

It is further alleged that *plaintiff* in this case has a good and sufficient defense to the divorce action, in that less

than a period of five years had elapsed from the date of the commitment of Fannie Crockett and the date of the commencement of the divorce proceeding.

We may say here that it was and is Miles Crockett's contention that, in order to meet the requirements of the above statute, it is only necessary to show that, at the time the divorce action was started, Fannie Crockett was in the insane hospital under order of court, and that her insanity had existed for five years prior to filing of the complaint. The trial court in the divorce proceeding found that Mrs. Crockett developed symptoms of incurable, chronic mania and dementia late in the year 1926, and thereafter became violent and threatening, and dangerous to members of her family, which condition gradually grew worse until March 17, 1934, the date of her commitment.

It is alleged in the second cause of action that the complaint in the divorce action was filed on April 8, 1938; that copies of the complaint and summons were served on Fannie Crockett, at Medical Lake, April 8, 1938; that on April 18, 1938, W. L. LaFollette filed a petition praying for the appointment of himself as guardian *ad litem* of Fannie Crockett; and that an order of court was entered on April 29, 1938, appointing Mr. LaFollette as such guardian *ad litem*. It is further alleged that, on or about August 19, 1938, such guardian *ad litem* and counsel for Miles Crockett entered into the stipulation hereinbefore referred to; that the judgment in the divorce proceeding was entered pursuant to such stipulation.

It is further alleged that plaintiff in this case has a good and sufficient defense to the divorce action, in that less than thirty days had elapsed from the date of the filing of the complaint to the date of the appointment of the guardian *ad litem*; that such guardian *ad litem* was appointed upon his own petition, and not at the request of, or with the consent or knowledge of, Fannie Crockett.

Rem. Rev. Stat., § 188 [P.P.C. § 3-33], provides in part as follows:

"When an insane person is a party to an action in the superior courts he shall appear by guardian, or if he has no

guardian, or in the opinion of the court the guardian is an improper person, the court will appoint one to act as guardian ad litem. Said guardian shall be appointed as follows: . . .

"(2) When the insane person is defendant, upon the application of a relative or friend of such insane person, such application shall be made within thirty days after the service of summons if served in the state of Washington . . . If no such application be made within the time above limited, application may be made by any party to the action."

It seems to be plaintiff's contention under this cause of action that, inasmuch as Mr. LaFollette's petition does not show that he was either a friend or relative of Fannie Crockett, and that his petition was filed within thirty days after the service of summons upon Fannie Crockett, the court had no authority to appoint him as such guardian *ad litem,* and that all the acts of such guardian *ad litem* were void and of no effect.

It may be stated here that it is alleged in Mr. LaFollette's petition that "she [Fannie Crockett] has sent a man to this petitioner asking that her rights be protected in said suit." It is further alleged in the petition

". . . that defendant [Fannie Crockett] is an inmate of the Eastern Washington Hospital for the Insane at Medical Lake, Washington, and has been sued for divorce."

It is alleged in plaintiff's fourth cause of action in the instant case that plaintiff, Franklin Crockett, approached Mr. LaFollette for the purpose of retaining him to defend the rights of Fannie Crockett in the divorce proceeding.

The allegations of the third cause of action are much the same as those in the second cause of action, with this addition: that plaintiff alleged that he had a good and sufficient defense to the divorce action, in that the guardian *ad litem* entered into the stipulation to which we have referred, without the consent or knowledge of Fannie Crockett; that he did not submit to the court a petition setting out the facts and reasons for compromising or settling the suit; that the guardian *ad litem* did not defend that action, but compromised and agreed to settle same.

The answer of the guardian *ad litem* shows that he denied each and every allegation of the complaint, and the findings of fact in the divorce action show that Mr. LaFollette, representing Fannie Crockett, appeared and resisted the complaint, and that it was only after hearing testimony that the court approved and adopted the stipulation of the parties relative to the property settlement.

The fourth cause of action is based upon alleged fraudulent practices of Miles Crockett, in that he procured the services of his sister, Margaret Caldwell, to approach a prospective witness, and by threats and intimidation coerce such witness not to appear at the trial of the divorce action, and not to interfere in any manner in the proceeding. It is further alleged that, at the time the alleged fraud was perpetrated, Fannie Crockett was confined in the hospital at Medical Lake, and was so confined up to the time of her death on January 26, 1946.

We may say here that it does not appear that Miles Crockett contrived in any way to have Mr. LaFollette appointed as guardian *ad litem,* or that he conspired with the guardian *ad litem* to the detriment of Fannie Crockett's interests, or at all. As a matter of fact, all it is alleged the witness (not named) who was prevented from appearing would have testified to was that all the real property of Mr. and Mrs. Crockett was acquired during their marriage, and therefore community property. The findings in the divorce action show that the real estate owned by the parties at that time was acquired during their marriage, and so it is apparent the trial court was advised of that fact at the time the decree was entered.

By his fifth cause of action, plaintiff asked that title to one half of the property owned by the parties at the time of the divorce proceedings be quieted, and that he be decreed to be the owner in fee of such property. This cause of action is predicated upon the allegation that the judgment rendered was void, and that, all of the property being community property, Fannie Crockett was entitled to have one half thereof awarded to her.

In the sixth cause of action, plaintiff sought to compel Miles Crockett to account for the rents, issues, and profits from the real estate, and the increase from the livestock, since August 23, 1938, it being alleged that he was on that date and at all times since in possession of all the real and personal property, which he has treated as his own.

By his seventh cause of action, plaintiff asked for judgment against Miles Crockett in the sum of four thousand dollars, for damages for depletion of the soil and for failure to control noxious weeds therein. This cause of action is based upon the allegations that Miles Crockett has been careless and negligent in his farming methods; that he has permitted the lands to become foul with noxious weeds and has failed to control the same.

Defendant, Miles Crockett, in the instant case, filed a demurrer to the complaint. He demurred to the general allegations, on the grounds that they did not state facts sufficient to constitute a cause of action and did not state a cause of action when read in connection with any additional allegations of the seven purported causes of action. Defendant also demurred to each of the seven purported causes of action, on the grounds that they did not state facts sufficient to constitute a cause of action against defendant; that the action had not been commenced within the time limited by law; and that there was a defect of parties plaintiff.

On May 28, 1946, the court entered an order sustaining the demurrer to the general allegations, and the demurrer to each of the respective causes of action. No specific ground is stated in the order. Plaintiff having refused to further plead, an order of dismissal of each of plaintiff's causes of action was entered, and plaintiff has appealed from such order.

Error is assigned upon the sustaining of the demurrer to each of the causes of action, and in entering the order of dismissal.

We have set out quite fully the basis of each of appellant's causes of action, in order that it may clearly appear just what appellant is seeking to accomplish by this action.

It should be kept in mind that the final decree of divorce was entered on March 17, 1939; that all of the property owned by the parties to that action was before the court and was awarded by the decree to the respective parties; that appellant in this action was not a party to the divorce action, and at neither the time that action was commenced nor at the time the decree was entered, had any interest in the subject matter of that action, nor any right, title, or interest in and to the property therein awarded. Appellant did not have any interest in the property involved in the divorce proceeding until the date of the death of his mother on January 26, 1946, which is some seven years after the date of the entry of the final decree of divorce.

Appellant seeks in this action to have the final decree of divorce vacated and set aside, contending that such decree is absolutely void and of no effect.

In order for appellant to prevail in this appeal, the allegations of his complaint must show facts which would entitle him to bring this action; in other words, that he is a proper party plaintiff.

Many cases have been cited by appellant in his brief to sustain his contentions relative to his several causes of action. We have no quarrel with the rules announced in the cited cases, but it is our opinion they are not applicable to the facts in the instant case, as alleged in the complaint. To illustrate, it is our opinion such cases as *Gibson v. Slater*, 42 Wash. 347, 84 Pac. 648, wherein the headnote quoted by appellant states:

"An administrator of the estate of a married woman, appointed within six years after her death, in the interest of heirs at law, may recover possession of the real estate seized by the husband and held adversely to the other heirs, even if the deceased left no debts,"

are not applicable here. In the cited case, there was no divorce action prior to the death of Mrs. Slater, wherein all the property of the parties was awarded. In that case, it was alleged that, after the death of his wife, the husband, Frank Slater, wrongfully seized and had since held possession of two hundred forty acres of land, which was the

separate property of Mrs. Slater. In the instant case, Mr. Crockett did not seize any property but was in possession of the property under the terms of the divorce decree.

In the case of *Smith v. Stiles,* 68 Wash. 345, 123 Pac. 448, the headnote states:

"A judgment quieting title in the heirs of a deceased person is not void because the action was brought by the executor and not in the name of the heirs."

But here again the court did not have before it a divorce decree and the subsequent death of one of the parties to such action, as we have in the instant case.

It may be admitted that we stated in *Griffith v. James,* 91 Wash. 607, 158 Pac. 251, that:

"It has also become the settled law of this state that actions to recover both real and personal property may be maintained by an executor or administrator even against those claiming the property as heirs or devisees."

The last-cited case was an unlawful detainer action, wherein the plaintiff, Nellie R. Griffith, as administratrix *de bonis non* of the estate of Jennie V. Thomas, deceased, sought to recover possession of certain premises situated in Tacoma. No situation was there presented such as we have in the instant case.

It may also be admitted that, as announced in *Lavigne v. Hughes,* 199 Wash. 285, 91 P. (2d) 560, the title to community property not disposed of in an interlocutory decree vests in the former owners as tenants in common. As sustaining the rule last above announced, the *Lavigne* case cites *Ambrose v. Moore,* 46 Wash. 463, 90 Pac. 588, 11 L. R. A. (N. S.) 103. In that case, the property involved was not before the court in a prior divorce action instituted by Augusta Ambrose against Domoniki Ambrose. In the cited case, Domoniki Ambrose brought an action against his former wife, Augusta Ambrose Moore, for the purpose of obtaining a decree that he was the owner of an undivided half interest in certain real property. In the opinion, after quoting Bal. Code, § 5723,

" 'In granting a divorce, the court shall also make such disposition of the property of the parties as shall appear just

and equitable, having regard to the respective merits of the parties, and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children. . . .' "

we stated:

"But this can only be done *where the property is brought before the divorce court* by complaint, answer, or cross-complaint. If the property rights of the parties are not thus brought before the court in some appropriate manner, such rights are not, and cannot, be affected by the decree. . . . Where no disposition of the property rights of the parties is made by the divorce court, the separate property of the husband prior to the divorce becomes his individual property after divorce, the separate property of the wife becomes her individual property, and from the necessities of the case, their joint or community property must become common property. After the divorce there is no community, and in the nature of things there can be no community property. The divorce does not vest or divest title, the title does not remain in abeyance, and it must vest in the former owners of the property as tenants in common. . . .

"The power to dispose of the property of the husband and wife is a mere incident of the power to grant the divorce, and ordinarily that power cannot be exercised by another court at another time or in an independent action." (Italics ours.)

■ We have cited the cases last above referred to, for the reason that there can be no question but that the rule in this state is that where property of the parties to a divorce decree is not before the court in such action, a subsequent action may be brought to determine the rights of the parties to such property, and undoubtedly such an action might be brought by the administrator or executor of a deceased party, for the benefit of heirs, to have their rights in such property established.

■ It may also be admitted, as stated in *Masterson v. Ogden*, 78 Wash. 644, 139 Pac. 654, Ann. Cas. 1914D, 885, that where there are parties to a divorce action, other than the husband and wife, claiming some interest in the property, and an interlocutory decree is entered adversely to the

interests of such third parties, and where after the entry of such decree and the perfection of an appeal therefrom the husband dies, this court may consider the appeal for the purpose of determining the rights of such third parties in and to such property. In other words, we held the action did not abate on the death of the husband, in so far as the rights of third parties to the action to have their property rights determined were concerned.

Appellant, in his brief, states:

"Courts will annul or vacate decrees of divorce on sufficient showing, after the death of one or both of the parties thereto, where property rights of heirs or personal representatives are dependent thereon."

In support of the above contention, appellant cites and quotes from *Wood v. Wood*, 136 Iowa 128, 113 N. W. 492, 125 Am. St. 223, 12 L. R. A. (N. S.) 891. While we cannot agree that the following statement:

"Where property interests are directly affected, the rule quite generally prevails that the decree in a divorce suit may be assailed by appeal or otherwise the same as any other judgment,"

is the rule in this state, after the death of one of the parties to a divorce action, unless, as hereinbefore stated, there are third parties to the divorce action, it does not appear from the opinion in the cited case that the property involved was before the court in the annulment proceedings.

While we have been cited to no case where the factual situation presented was comparable to the facts in the instant case, it may be that in some jurisdictions an action such as here instituted could be maintained by the personal representative of the deceased party to a divorce action. This court, however, in the early case of *Dwyer v. Nolan*, 40 Wash. 459, 82 Pac. 746, 1 L. R. A. (N. S.) 551, 111 Am. St. 919, announced a contrary rule.

In the cited case, the record shows that a divorce action was brought by John Nolan against his wife, Elizabeth Nolan, and a decree was entered on November 20, 1899. On April 6, 1905, Elizabeth Nolan filed a motion, supported by affidavits, seeking to have the divorce decree vacated

and set aside, on the ground that the court in the divorce action acted without jurisdiction of her as defendant, and that the decree was therefore void. John Nolan having died in 1905, his executors were substituted as parties plaintiff. The contention of the wife (appellant) was, as stated, that the trial court acted without competent jurisdiction of the party defendant, and that the judgment was therefore void. The opinion states:

"We will not enter into an investigation of the question presented as to whether or not the service in the divorce proceeding was sufficient to give the court jurisdiction of the person of the defendant, for the reason *that there are no proper parties* to this proceeding, and that, in the nature of things, the plaintiff [John Nolan] having died, *the question of divorce cannot be relitigated.* It will not be gainsaid that an action for divorce *is a purely personal action.* Nothing is sought to be affected but the marital status of the husband and wife. The distribution of property in such an action is incidental, and it is clearly incontestable that, upon the death of either party, whether before or after the decree, the *subject of the controversy is eliminated.* If the death of the plaintiff in this case had occurred before judgment, it will not be urged that there could have been a substitution of his executors to represent him in the prosecution of the case. Such a proposition, for manifest reasons, would not be entertained by a court for a moment. What additional authority or power did they have to represent him in the same case when he died after judgment? Manifestly none. They cannot stipulate with reference to the decree. They cannot consent to setting aside the judgment. *There is no conceivable particular in which they represent the deceased or the heirs with reference to the subject-matter of the action, in the slightest degree.* The very nature of the action renders this impossible." (Italics ours.)

In the instant case, neither appellant nor any other person had an interest in the subject matter of the divorce action or the property therein involved, either at the time the divorce proceeding was started or at the time the interlocutory or final decree of divorce was entered. The subject of the controversy having been eliminated by the death of Fannie Crockett, appellant, as her personal representative, would have no authority to move in the original

action to vacate the decree, nor would he have any authority in this action to attack such decree, either on the theory that he represented the deceased, or on behalf of her heirs.

In the case of *McPherson v. McPherson,* 200 Wash. 365, 93 P. (2d) 428, we quoted with approval what has hereinbefore been quoted from *Dwyer v. Nolan, supra.* In the *McPherson* case, Edith McPherson instituted an action for divorce against James McPherson, and thereafter an interlocutory decree was entered in favor of the plaintiff. James McPherson appealed from the decree, and, after he had perfected his appeal, Edith McPherson died. The interlocutory decree settled the property rights of the parties. Seattle-First National Bank, the duly appointed and qualified executor of the estate of Edith McPherson, appeared in the action and asked to be substituted for Edith McPherson, for the purpose of having this court review the decree of the trial court relative to the *property rights of the parties only.* The executor admitted that the question of whether or not there were grounds for a divorce could not be examined by this court on appeal, as that question failed by reason of the death of Edith McPherson; but the executor contended that the action did not abate in so far as the property rights of the parties were affected. Appellant contended that the *entire action* abated upon the death of his wife. In answer to the contention of the executor, we stated:

"There is much authority from other jurisdictions to sustain this contention of respondent, but we are of the opinion that, under our decisions, the interlocutory decree, *in its entirety,* abates and becomes a nullity upon the death of one of the parties, whether before or after the interlocutory decree is entered." (Italics ours.)

We further stated that this court was without authority to reverse, modify, or affirm an interlocutory decree of divorce after the death of one of the parties to such decree, except where the *rights of third parties were involved in the decree itself,* and then only for the purpose of adjudicating the rights of such third parties. Our statement relative to the rights of third parties who are parties to a

divorce action was based upon the case of *Masterson v. Ogden,* 78 Wash. 644, 139 Pac. 654, Ann. Cas. 1914D, 885.

In the *McPherson* case, an interlocutory decree only was involved, and we held it became a nullity upon the death of one of the parties, the action having abated. The interlocutory decree was decided to be a nullity, because parties to a divorce action are not divorced until the final decree is entered. However, the basis for the denial of the right to substitute the personal representative of the deceased wife was that the subject matter of the action had abated.

In the instant case, we are of the opinion that the final decree of divorce in its entirety is a valid and binding decree, settling the rights of the parties thereto,. which decree cannot be vacated by the administrator of Mrs. Crockett's estate after her death. In other words, the divorce action being purely a personal one, and one of the parties having died, the subject matter of the action has ceased to exist, and there is no theory that we know of, having in mind our decisions, upon which the administrator of Mrs. Crockett's estate could, as her representative or representing her heirs, bring an action to have such decree vacated.

Having reached the conclusion that appellant cannot, under the facts in this case, attack the final decree of divorce, it follows that appellant's sixth cause of action for rents, issues, and profits, and for increases, does not state a cause of action, as respondent was, by the decree, awarded such rents, issues, profits, and increases.

It is also apparent, we think, that appellant's allegations in his seventh cause of action do not state facts sufficient to entitle him to any relief.

In view of the conclusion reached herein, we have not discussed the jurisdictional questions raised by appellant, nor do we deem it necessary so to do, for the reasons herein stated.

■ While we do not deem it necessary so to do, we feel justified in stating that, in our opinion, the trial court was authorized under the statute to appoint Mr. LaFollette as guardian *ad litem* for Mrs. Crockett in the divorce pro-

ceeding. We are further of the opinion there is no basis in the record for the charge that Mr. LaFollette did not represent the interests of Mrs. Crockett in such proceeding, because he was a party to the property settlement. It seems to us that, under the facts in this case, the property settlement was fair and just, and, as stated, the trial court so found after hearing evidence.

For the reasons herein assigned, we are of the opinion the judgment of the trial court was right, and it must be and is hereby affirmed.

MALLERY, C. J., STEINERT, ROBINSON, and HILL, JJ., concur.