53 Cal.App.3d 479 (1975)
125 Cal. Rptr. 878
In re the Marriage of RUTH MAY and BYRON HENRY FRAPWELL.
RUTH MAY FRAPWELL, Appellant,
v.
JAMES P. GILLESPIE, as Executor, etc., Respondent.
Docket No. 46781.
Court of Appeals of California, Second District, Division Four.
December 5, 1975.
*480 COUNSEL
Clendening, Murray & Pfeiffer and James D. Murray for Appellant.
John A. MacDowell for Respondent.
OPINION
KINGSLEY, Acting P.J.
This is a second appeal[1] in the litigation over the proper division of the marital estate of the late Byron H. Frapwell and his surviving wife. The husband and wife were in their late fifties at the time of their marriage. They met in September 1972; within a week Byron proposed marriage and Ruth accepted. They were married on December 8, 1972, and separated on April 13, 1973. On June 18, 1973, Ruth filed the present action for dissolution. An interlocutory decree was *481 granted on March 11, 1974, and entered on May 22, 1974. On May 29, 1974, Ruth appealed (2d Civ. No. 45072) from the portions of the interlocutory decree dealing with the division of property as community or separate. On June 30, 1975, this court filed its opinion, sustaining Ruth's contentions and reversing the portions of the interlocutory decree from which she had appealed. (In re Marriage of Frapwell (1975) 49 Cal. App.3d 597 [122 Cal. Rptr. 718].)
While that appeal was pending, respondent Gillespie (who had been substituted on Feb. 21, 1975, as party respondent following Byron's death on Dec. 22, 1974) filed a motion for the entry of a final decree of dissolution, nunc pro tunc as of July 22, 1974. We quote the declaration made by respondent in support of his motion.[2]
"I, JAMES P. GILLESPIE, say:
"That the respondent, BYRON HENRY FRAPWELL, died on or about December 22, 1974; and that on January 29, 1975, I was appointed as executor of the will of BYRON H. FRAPWELL. That I was the attorney of record for said respondent herein, and am familiar with all of the facts and circumstances of this proceeding.
"The court acquired jurisdiction of the respondent on August 8, 1973, by respondent on that date having appeared.
"An interlocutory judgment of dissolution of marriage was granted by this court on March 11, 1974, and entered in Judgment Book WE 113, page 010, on May 22, 1974. Petitioner filed a notice of appeal on or about May 29, 1974, and said appeal is presently pending in the Court of Appeal of the State of California, Second Appellate District, being Case No. 45072. That the particular portion of the judgment appealed from pertained to the confirmation and setting aside of the following property to the respondent as his sole and separate property:
"1. 1972 Oldsmobile automobile;
"2. Two savings accounts at Great Western Savings and Loan Association;
*482 "3. Checking account at Bank of America;
"4. 375 shares of stock of Lucky Stores, Inc.
In particular, the appeal is unrelated to the court's adjudication that the parties are entitled to have their marriage dissolved, and furthermore that although the petitioner, in her Notice of Appeal, indicated that she was appealing from that portion of the judgment confirming the real property located at 13219 Premiere, Downey, California, as the sole and separate property of the respondent, the brief filed on behalf of the petitioner was silent as to this particular point. Therefore, it is assumed that the petitioner is abandoning that portion of the appeal.
"That the petitioner-appellant's opening brief was received by your declarant on or about December 11, 1974; that your declarant had thirty days in which to prepare respondent's brief; that in the interim period, to wit, on December 22, 1974, said respondent died. That the issues to be appealed and the allegations set forth were not known in particularity until said appellant's brief was in the possession of your declarant. It was for this reason that the application was not made for entry of a partial final judgment dissolving the marriage.
"Your declarant further states that in preparing the respondent's brief, he would have at that time prepared an application for said respondent to sign for entry of a partial judgment of dissolving, dissolving said marriage nunc pro tunc as of July 22, 1974.
"Therefore, it is requested that an order be made directing the clerk of the court to enter a partial final judgment of dissolution of marriage, as to that portion of the interlocutory judgment dissolving the marriage, and as to that portion of the interlocutory judgment which confirms and sets aside to the respondent the real property commonly known as 13219 Premiere, Downey, California; and that said partial final judgment be entered nunc pro tunc as of July 22, 1974.
"I declare under penalty of perjury that the foregoing is true and correct.
"Executed on February 4, 1975, at Downey, California.
"/s/ James P. Gillespie JAMES P. GILLESPIE"
*483 Ruth filed an opposition to the motion which, in effect, raised three contentions, i.e., (1) it was untrue that respondent Gillespie was not aware of the issues to be raised on Ruth's first appeal; (2) during his lifetime, Byron had executed and recorded a declaration of homestead, naming Ruth as his wife, on the home in which the parties had resided; and (3) the sole purpose of seeking a nunc pro tunc entry of the final decree was to defeat the claim of Ruth to the homesteaded property under section 1265 of the Civil Code and section 663 of the Probate Code. At the argument on the motion, it was claimed by Ruth's counsel, and not denied, that respondent Gillespie, who had been counsel for Byron during his lifetime, had had both knowledge of, and possession of, the recorded declaration of homestead since shortly after its recordation on February 15, 1973. In fact, the declaration, a copy of which appears in the record in this court, shows on its face that it was prepared and filed by Mr. Gillespie and was returnable to his office after filing.

I
The history of the statutes providing for nunc pro tunc decrees in cases of divorce (now dissolution) indicates that they stand on a different ground from nunc pro tunc orders, decrees and judgments in other civil cases. The California procedure for interlocutory decrees gave rise to much confusion on the part of litigants and (sometimes) to their counsel. An interlocutory decree is effective only on its entry  occasionally (as in this case) some time after the court hearing; until recently, a final decree could not be entered until one year after the entry of the interlocutory decree, and then only on the filing of an application for such action;[3] the parties remained married until the final decree was entered. However, many people, ignorant of those technical provisions, thought that the marriage automatically terminated, without further judicial action, on the first anniversary of the court hearing. As a result, quite innocent people found themselves bigamists. To avoid that result, the Legislature, by a series of provisions in the Civil Code,[4] provided for the entry, nunc pro tunc as of the earliest possible date, both of the interlocutory and the final decrees. It is against that background that the language quoted by respondent from Kern v. Kern (1968) 261 Cal. App.2d 325, 337 [67 *484 Cal. Rptr. 802], must be read. In the ordinary case, where a nunc pro tunc entry would aid an innocent litigant without harming the other party, trial courts interpreted quite leniently claims of "mistake, ignorance or inadvertence." Much of the pragmatic reason for the nunc pro tunc procedure in divorce (dissolution) actions disappeared when, in 1965, the one-year waiting period was made to run from the date of service of the summons and complaint, so that, as the court observed in Estate of Casimir (1971) 19 Cal. App.3d 773, 777 [97 Cal. Rptr. 623], often a final decree of dissolution can be entered concurrently with the entry of the interlocutory decree. However, the various misapprehensions may still occur, even though not as frequently.
Respondent relies heavily on the opinion of Division Two of this court in Estate of Casimir, supra. We do not agree that that case applies here. In Casimir, the application for a final decree was filed, promptly, on the eighth day that it could have been filed and one day before the husband died. It was not entered until several months later. The wife appealed from the nunc pro tunc decree but her appeal was dismissed and that decree had become final. The parties were then in dispute over the effect of that final decree on the wife's right to a family allowance. The actual holding of the court was that the nunc pro tunc decree, being final, was determinative of the wife's rights in probate. What is said in the opinion about the propriety of the nunc pro tunc order is, thus, dictum. Looking at that dictum, significant differences appear in the case at bench: (1) here, the application for a final decree nunc pro tunc was not filed until six and one-half months after it could lawfully have been filed; (2) the declarations show that an earlier application was not prevented by any neglect, ignorance or inadvertence, but because of the deliberate decision by the husband's executor to await the progress of the first appeal; and (3) the wife here seeks to protect not a right to a discretionary order for a family allowance, but for a vested and undiscretionary right under the homestead laws.
Other cases cited by respondent are equally inapplicable. In Kern v. Kern (1968) 261 Cal. App.2d 325 [67 Cal. Rptr. 802], the court found a reasonable ground for delay in applying for a final decree in the mental state of the wife and a reasonable desire of her conservator, in the light of earlier attempts at a reconciliation, to ascertain her wishes. In Waller v. Waller (1970) 3 Cal. App.3d 456 [83 Cal. Rptr. 533], there had been no appeal from the nunc pro tunc order; the language relied on goes only to the question of whether a trial court has jurisdiction to enter a decree that cuts off rights of inheritance, not whether such a decree is an abuse *485 of discretion in a particular case. Hamrick v. Hamrick (1953) 119 Cal. App.2d 839 [260 P.2d 188] dealt with a decree that validated a second marriage which, the court held, had innocently been contracted. Hull v. Hull (1951) 102 Cal. App.2d 382 [227 P.2d 546], was also a case of validating a second marriage innocently contracted. So, also, was the situation in Estate of Hughes (1947) 80 Cal. App.2d 550 [182 P.2d 253].
(1) In short, we are cited to no case, and we have found none, holding that a trial court properly exercised its discretion in ordering the entry, nunc pro tunc, of a final decree where no second marriage was involved and where no neglect, ignorance or inadvertence has been shown, where the effect of such an order would be to cut off homestead rights, recognized by the husband prior to his death and where the effect of the decree was to preserve no significant rights of the applying spouse but only to defeat the rights of the other spouse.
The order herein under attack was an abuse of discretion by the trial court. It is reversed.
Dunn, J., and Jefferson (Bernard), J., concurred.
NOTES
[1] The brief for respondent proceeds on the mistaken, and inexcusable, ground that the present appeal is from the nonappealable order directing the entry of a final decree nunc pro tunc. The clerk's transcript before us contains a copy of Ruth's notice of appeal. That notice, clearly and expressly, is from "The Partial Final Judgment (Marriage) of Dissolution of Marriage." This is NOT an appeal from the preliminary order.
[2] As we advised the parties, we have augmented the record on appeal by an examination of the portions of the superior court file containing respondent's motion for the entry of a final decree nunc pro tunc and the "Request and Declaration" of Mr. Gillespie filed in support of that motion.
[3] While the statutes provided for entry "on the court's own motion," rule 1245, California Rules of Court, has long required the filing of an application on a form prescribed by the Judicial Council. We take judicial notice that that procedure has long been followed in the superior court herein involved.
[4] Former sections 131.5 and 133 of the Civil Code; now sections 4513 and 4515 of the Civil Code.