[No. 49084–8. En Banc. June 23, 1983.]

*In the Matter of the Marriage of* BILL GENE PRATT, *Respondent, and* NADINE M. PRATT, *Petitioner.*

*Barbara D. Johnson* (of *Wolf, Griffith, Bittner, Abbott & Roberts*), for petitioner.

*Charles R. Cusack, Jr.* (of *Blair, Schaefer, Hutchison, Wynne, Potter, Horton & Johnson*), for respondent.

STAFFORD, J.—Petitioner, Nadine Pratt, challenges a Court of Appeals decision which recognizes an inherent common law power of a trial court to enter a final dissolution decree nunc pro tunc. We hold that a dissolution decree is not final until signed and entered by the trial court. A nunc pro tunc decree may be entered only when necessary to correct ministerial or clerical errors or when mandated by public policy consideration. The Court of Appeals is reversed.

Nadine and Bill Pratt were married on November 11, 1978. Both had been married previously and had children from their former marriages. Four months after the wedding, the parties separated. On April 3, 1979, Mr. Pratt filed a complaint for dissolution alleging the marriage was irretrievably broken. In her answer, petitioner agreed the marriage was beyond reconciliation but disagreed with the proposed property distribution.

A brief trial was held on February 26, 1980, after which the court issued an oral decision outlining disposition of the community assets and debts. The trial court then concluded: "The marriage will be dissolved and the former name of Imus will be restored." The court further ordered that Mr. Pratt pay $225 to Mrs. Pratt for her attorney's fees. This oral decision is noted in the minute entry prepared by the court clerk.

Following the trial, Mr. Pratt's attorney prepared written findings of fact, conclusions of law and a proposed decree of dissolution reflecting the court's oral decision. These documents were sent to Mrs. Pratt's attorney on March 31, 1980 and returned on April 24, 1980 with consent to entry of the final decree. Mrs. Pratt's attorney requested, however, that entry of the decree be withheld until Mr. Pratt had paid the $225 in attorney's fees owed to Mrs. Pratt.[1]

Mr. Pratt's attorney attempted to locate his client but was unsuccessful. Eventually, he found him in a local hospital on Friday, May 23, 1980. He was suffering from a heart condition. Mr. Pratt agreed at that time to pay the attorney's fees on the following Monday, May 26. Unfortunately, Mr. Pratt died intestate on May 24, 1980, before the fees could be paid or the decree entered.

On May 30, 1980, Mr. Pratt's attorney filed a motion to enter a decree of dissolution nunc pro tunc on behalf of his deceased client. On June 24, 1980, Mr. Pratt's attorney filed a second motion on behalf of the deceased client's children. Both motions were opposed by Mrs. Pratt's attorney. After a contested hearing, the trial court entered a decree of dissolution nunc pro tunc, effective March 31, 1980.

The trial court denied Mrs. Pratt's motion for reconsideration and on August 8, 1980, issued an order entering a

---

[1]The practice of delaying entry of decree for payment of attorney's fees in a dissolution action is questionable. *See* CPR DR 1–102(A)(5); 7–101(A)(1). We take this opportunity to note our strong disapproval of that practice. The attorneys who represented Mrs. Pratt on appeal were not involved in the representation of Mrs. Pratt at trial, however. Any questionable conduct in delaying entry of the dissolution decree is attributable solely to Mrs. Pratt's trial counsel.

decree of dissolution nunc pro tunc. The Court of Appeals affirmed, holding the trial court had authority to enter the decree nunc pro tunc. We granted a petition for review.

## I

At the outset, petitioner challenges the standing of Mr. Pratt's attorney to bring a motion for entry of a dissolution decree nunc pro tunc on behalf of a deceased client. Further, petitioner challenges the standing of the decedent's children.

We have held that a dissolution proceeding ordinarily abates upon the death of one of the spouses. *Osborne v. Osborne*, 60 Wn.2d 163, 372 P.2d 538 (1962); *Crockett v. Crockett*, 27 Wn.2d 877, 181 P.2d 180 (1947). While in *Masterson v. Ogden*, 78 Wash. 644, 139 P. 654 (1914), this court recognized an exception for third parties who were directly involved in the original proceeding, Mr. Pratt's children were not parties to their father's dissolution action. Consequently, Mr. Pratt's attorney was neither empowered to move for a dissolution decree nunc pro tunc on behalf of his deceased client nor could a motion be brought on behalf of decedent's children. The standing problem is of no great import, however.

As the Court of Appeals noted, since a trial court has inherent power to enter a decree nunc pro tunc *on its own motion* the court can allow its attention to be drawn to the matter by any interested party. Although Mr. Pratt's children were not parties to the original dissolution proceeding, there is no doubt they had a significant interest in seeking a dissolution decree nunc pro tunc.[2] *See Johnson v. Johnson*, 198 Misc. 691, 98 N.Y.S.2d 336 (1950); *Kern v. Kern*, 261 Cal. App. 2d 325, 67 Cal. Rptr. 802 (1968). The

---

[2]Under RCW 11.04.015, if Nadine Pratt were considered married at the time of her husband's death, then as his surviving spouse, she would inherit one-half of his separate property. If, however, the decree of dissolution is given effect as of March 31, 1980, then Mr. Pratt's entire estate would pass to his children. At the time of his death, Mr. Pratt owned separate property worth approximately $70,000.

real issue, however, is not whether respondents had standing to bring their motion, but whether the trial court acted properly on its own motion. It is to that question we now turn.

## II

A court has statutory authority to issue a dissolution decree nunc pro tunc. RCW 26.09.290. Such authority is limited, however, to circumstances involving mistake, inadvertence, or neglect and then only when necessary to validate a subsequent marriage. *See In re Estate of Carter,* 14 Wn. App. 271, 274, 540 P.2d 474 (1975). The instant case is clearly outside the scope of statutory authority in that the nunc pro tunc decree was neither necessary to avoid a bigamous marriage nor necessary to legitimize otherwise illegitimate children.

In addition to statutory authority, we have recognized the inherent common law power of a court to enter a decree nunc pro tunc when a party has died before entry of the final decree. *Garrett v. Byerly,* 155 Wash. 351, 284 P. 343, 68 A.L.R. 254 (1930). In *Garrett,* this court set forth three limitations on the exercise of this power. First, the cause at the time of death must be ripe for judgment. Second, the delay in entering judgment must not have been caused by the party seeking the decree nunc pro tunc. Finally, the judgment must not injuriously affect subsequently acquired rights of innocent third parties. *Garrett,* at 357.

While the *Garrett* requirements have been met herein, it is important to note that *Garrett* did not arise in a dissolution context. Clearly a trial court has inherent authority to enter a decree nunc pro tunc in a dissolution case. *See Bruce v. Bruce,* 48 Wn.2d 635, 296 P.2d 310 (1956). In a dissolution setting, however, that discretion may be exercised only where it is necessary to effectuate an important public policy (*i.e.,* avoidance of bigamy or bastardy) or where necessary to correct a clerical or ministerial error. *State ex rel. Tufton v. Superior Court,* 46 Wash. 395, 90 P. 258 (1907); *State v. Ryan,* 146 Wash. 114, 261 P. 775

(1927); *Barros v. Barros,* 26 Wn. App. 363, 365–66, 613 P.2d 547 (1980).

Underlying the view adopted in the foregoing cases is the important premise that a decree is not final until signed and entered by the trial court. We recently reaffirmed this principle in *Department of Labor & Indus. v. Kennewick,* 99 Wn.2d 225, 661 P.2d 133 (1983). As we stated in *State ex rel. Tufton v. Superior Court, supra* at 398, "the almost uniform practice is to regard the oral announcement from the bench as merely a guide to the preparation of written findings, which, when prepared and signed, are regarded as the real findings on which the decree is based . . ." Until a final decree is signed and entered by the court, *anyone can change his mind. Osborne v. Osborne, supra* at 167. The parties can reconcile, the terms of the property distribution can be altered or the trial court can decide not to grant the decree. In an effort to accomplish "justice" in an individual case, the trial court and the Court of Appeals overlooked these possibilities as well as our rules on finality of judgments.

A situation similar to the one at hand was addressed by the Supreme Court of Michigan in *Tiedman v. Tiedman,* 400 Mich. 571, 576, 255 N.W.2d 632 (1977). The court in that case declared:

> The rule is well established that courts speak through their judgments and decrees, not their oral statements or written opinions. Generally, a judgment or order is reduced to written form, as was contemplated in this case; until reduced to writing and signed, the judgment did not become effective and the parties remained married.
>
> . . .
>
> "A judgment is the final consideration and determination of a court of competent jurisdiction upon the matters submitted to it" . . .; until a judgment is signed the judge may change his mind and sign a different judgment.

(Footnote omitted.)

We agree with the Michigan court. The effect of the nunc

pro tunc decree was to cut off petitioner's inheritance rights. Regardless of the apparent equities which favor the respondents, there was no second marriage involved and, therefore, no public policy served by entering the decree nunc pro tunc. *See In re Marriage of Frapwell,* 53 Cal. App. 3d 479, 125 Cal. Rptr. 878 (1975). Moreover, the decree did not merely correct a ministerial or clerical error. As we have stated:

> [A motion nunc pro tunc] may be used to make the record speak the truth, but not to make it speak what it did not speak but ought to have spoken. If the court has not rendered a judgment that it might or should have rendered, or if it has rendered an imperfect or improper judgment, it has no power to remedy these errors or omissions by ordering the entry nunc pro tunc of a proper judgment.

*State v. Ryan, supra* at 117; *Osborne v. Osborne, supra* at 167.

The dissolution action pending between Mr. and Mrs. Pratt abated upon the death of Mr. Pratt. *Crockett v. Crockett, supra.* At that time, the trial court lost jurisdiction over the matter. *Osborne v. Osborne, supra* at 167.

In such a dissolution setting, a court may enter a decree nunc pro tunc to make the record reflect *what actually happened.* In entering a decree nunc pro tunc to a date prior to Mr. Pratt's death, however, the trial court improperly attempted to make the record reflect what *might* have happened had Mr. Pratt lived. A court's limited power to enter a decree nunc pro tunc in a dissolution setting cannot be exercised in the absence of a ministerial or clerical error or an important public purpose for so doing.

The Court of Appeals is reversed and the judgment of the trial court vacated.

ROSELLINI, UTTER, BRACHTENBACH, DORE, and PEARSON, JJ., concur.

DOLLIVER, J. (dissenting)—The majority overturns the Court of Appeals and in so doing expresses as its belief (a)

prior to the final entry of the decree any of those involved—the parties, the trial court—could change their minds and (b) no important public purpose would be served by entering a decree nunc pro tunc.

With respect to (a), since, as Hume observed, the future can never be predicted, our expectation that the future will be like the past (*e.g.*, that the sun will rise tomorrow morning) has no basis in reason; it is purely a matter of belief. Hume also asserted, however, that such theoretical skepticism is irrelevant to the practical concerns of daily life. *See* Hume, "An Enquiry Concerning Human Understanding", in 35 *Great Books of the Western World* 451, 469, § 6—Of Probability (1952). Such is the case here. The record is clear: There was full agreement the final papers—findings, conclusions, and decree—would be signed on Monday. The litigation was over; this court should not now indulge a hypertechnical reluctance but should allow the decree nunc pro tunc to be entered so as "to make the record speak the truth". *In re Marriage of Pratt*, 32 Wn. App. 665, 668, 649 P.2d 141 (1982).

As to (b), it would seem to me a desirable public policy to prevent the fortuitous receipt of a windfall by one who had no expectation or moral claim to the inheritance. In refusing to do this the majority destroys the legitimate expectation of those who clearly have an expectation and moral right—the children of the decedent. The majority can only bring itself to mention grudgingly the "apparent equities" of the children and the "justice" (majority, at 910–11) of the case. I do not share this aversion to the legitimate expectations and claims of the children.

The power to enter the decree nunc pro tunc exists. *See In re Marriage of Pratt, supra*; majority, at 909. It should be done. The majority decries a lack of important public purpose. On the contrary, this case presents to the court the very highest of public purposes: to act within established law to serve the broad purposes of the community and bring justice to the litigants.

I dissent.

WILLIAMS, C.J., and DIMMICK, J., concur with DOLLIVER, J.

Reconsideration denied August 24, 1983.