86 P.3d 206 (2004)
Kitty VANDERCOOK, as Personal Representative of the Estate of Arthur Reece, Respondent,
v.
Bertalee E. REECE, Appellant.
In the Matter of the Estate of Arthur H. Reece, Deceased.
No. 29884-8-II.
Court of Appeals of Washington, Division 2.
March 16, 2004.
*207 Christine Marty Masse, Seattle, WA, Jeffrey C. Thede, Portland, OR, for Appellant.
John Arthur Mc Kerricher, Mano McKerricher Paroutaud & Hunt, Chehalis, WA, for Respondent.
MORGAN, P.J.
Acting as administrator for the Estate of Bertalee Reece, Leslie Freres appeals from an order declaring that Bertalee and Arthur Reece, husband and wife, effectively rescinded their community property agreement before Arthur's death. We affirm.
Arthur and Bertalee Reece were married in 1947 or 1948. They remained married until Arthur's death on August 2, 2002. Bertalee died a few weeks later.[1] Kitty Vandercook is the personal representative of Arthur's estate. Leslie Freres is the personal representative of Bertalee's estate.
On December 16, 1981, Arthur and Bertalee executed a three-prong community property agreement. The agreement provided (1) that any later-acquired separate property would be converted to community property at the time of its acquisition; and (3) that any then-owned separate property would be converted to community property immediately; (2) that when either Arthur or Bertalee died, "title to all community property ... shall immediately vest ... in the survivor[.]"[2] The agreement did not have a termination clause.
In 1991, Arthur and Bertalee each executed a will consistent with their community property agreement. Each left his or her property to the other or, if the other did not survive, to Vandercook.
On October 10, 2001, Arthur and Bertalee separated. On November 4, 2001, Bertalee executed a new will in which she purported to leave all of her property to Freres.
On November 9, 2001, Arthur filed a petition for dissolution in which he alleged that *208 the marriage was irretrievably broken. In an answer filed on November 14, 2001, Bertalee agreed that the marriage was irretrievably broken.
On November 30, 2001, Arthur and Bertalee agreed to a restraining order in the dissolution action. It restrained each of them from "changing [his or her] Last Will and Testament without agreement of the parties or further order of the court."[3]
On April 19, 2002, Arthur executed a new will in which he purported to leave his community property to Vandercook.
On or about July 2, 2002, Arthur and Bertalee were about two weeks from beginning their dissolution trial. They each had separate counsel. They agreed to vacate the restraining order of November 30, 2001; to validate any new will that either might already have made; to permit any new will that either might later make; and to manifest their agreement in a formal court order. As entered on July 2, 2002, that order stated:
This matter having come before the Court on an agreed basis and the parties appearing by and through their respective counsel, ...
It is hereby ordered that the temporary restraint against the parties changing their Wills contained in the Temporary Order entered on November 30, 2001, is hereby vacated. Both parties are free to execute Last Will and Testaments and any Wills executed prior to the date of this Order shall be considered valid unless and until a subsequent Last Will and Testament has been executed by that party.[[4]]
The dissolution trial began on July 17, 2002. According to the judge's later recollection, Arthur and Bertalee both testified "that they did not intend that their Community Property Agreement be enforced and that they both desired to leave their estates ... to the heirs designated in their new wills."[5] After the court orally divided the parties' property, the court adjourned until a final written decree could be prepared for its signature.
Arthur died on August 2, 2002, before the court had entered a final written decree. As a consequence, the dissolution action abated.[6]
On August 9, 2002, Vandercook submitted Arthur's will for probate. She was given a probate cause number and named to administer Arthur's estate.
On October 3, 2002, Vandercook moved for a declaratory judgment under the probate cause number.[7] She asked the probate court to declare that Arthur and Bertalee had rescinded their community property agreement before his death.
On October 25, 2002, the probate court heard Vandercook's motion. The judge was the same one who had presided over the dissolution trial. Each party relied on documents that she attached to her legal memorandum. Neither offered live testimony or a certified transcript of testimony given at the dissolution trial. Over Freres's objection,[8] the court noted and relied in part on its own memory of testimony that Arthur and Bertalee had given at the dissolution trial. The court granted Vandercook's motion.
Freres now appeals. She contends that the probate court erred by relying on its own memory of Arthur and Bertalee's dissolution testimony, and by holding that Arthur and Bertalee had rescinded their community property agreement before Arthur died. We discuss (1) whether the probate court erred by relying on its own memory and (2) whether that error was harmless or prejudicial. In our discussion of whether the error was harmless, we conclude that the record shows beyond reasonable dispute that Arthur and Bertalee rescinded their community property agreement on or before July 2, 2002.

I.
The first question is whether the probate court erred by relying on its memory of *209 oral testimony given at the dissolution trial. Freres asserts that it did. Vandercook responds that the probate court properly took judicial notice under ER 201. Freres replies (1) that a judge's memory of oral testimony is not a proper subject of judicial notice under ER 201, and (2) that the judge violated ER 605 by making himself a witness.
Freres is correct on both of her replies. ER 201 sometimes permits a court to take judicial notice of court records.[9] The reason is that the existence of such records (as opposed to the truth of the contents of the allegations contained therein) is "not subject to reasonable dispute[.]"[10] This reason does not extend to a judge's memory of oral testimony from a prior case, the accuracy and contents of which are subject to reasonable dispute. Accordingly, the judge who would offer his or her own memory of oral testimony given at a different trial must testify as a witness,[11] and he or she is not permitted to do that in a proceeding over which he or she is then presiding.[12] Here then, the probate court was not entitled to rely on its memory of oral testimony that Arthur and Bertalee had given at the dissolution trial.

II.
The next question is whether the trial court's error in using its own recollection as evidence was harmless or prejudicial. Evidential error is harmless if, without it, the trial court would necessarily have arrived at the same conclusion.[13] A community property agreement is rescinded if and when the parties agree to rescind it.[14] Accordingly, we inquire whether the record, viewed independently of the probate judge's recollection, shows beyond reasonable dispute that Arthur and Bertalee rescinded their community property agreement before he died.
On July 2, 2002, Arthur and Bertalee agreed to a court order in the dissolution case, the trial of which was only two weeks away. Bertalee objectively manifested and communicated to Arthur her intent that he henceforth be "free to execute" a last will and testament, as well as her intent that any last will and testament he already had executed "be considered valid" until he chose to amend or revoke it.[15] Arthur reciprocally manifested and communicated to Bertalee his intent that she henceforth be "free to execute" a last will and testament, as well as his intent that any last will and testament she already had executed "be considered valid" until she chose to amend or revoke it.[16] Each was acting inconsistently with the 1981 community property agreement, which until then had prevented either of them from devising or bequeathing community property to anyone except the other.[17] Given that Washington follows the objective manifestation *210 theory of contracts,[18] each was necessarily agreeing to rescind the testamentary prong of their community property agreement, and that the other's will (whether made before or after July 2, 2002) would henceforth be valid. Viewed independently of the probate judge's recollection, the record shows beyond reasonable dispute that Arthur and Bertalee rescinded the testamentary prong of their community property agreement; that Arthur's will of April 19, 2002, was not subject to the community property agreement on the date he died; and that the probate court's erroneous reliance on its own recollection of dissolution-trial testimony was necessarily harmless.
Affirmed.
We concur: SEINFELD and BRIDGEWATER, JJ.
NOTES
[1] The record does not show the exact date of Bertalee's death. It does show, however, that she died before October 25, 2002.
[2] Clerk's Papers (CP) at 57.
[3] CP at 62; CP at 4 (Finding of Fact 5).
[4] CP at 68 (some capitalization deleted); CP at 11 (Finding of Fact 7).
[5] CP at 12 (Finding of Fact 9).
[6] See Pratt v. Pratt, 99 Wash.2d 905, 665 P.2d 400 (1983).
[7] See RCW 11.96A.090-.100.
[8] Vandercook claims Freres did not object, but the record shows otherwise.
[9] E.g., Swak v. Dep't of Labor & Indus., 40 Wash.2d 51, 53-54, 240 P.2d 560 (1952).
[10] See ER 201(b).
[11] See State v. Bringgold, 40 Wash. 12, 17-18, 82 P. 132 (1905) (judge who presided over earlier trial, and who is not presiding at present trial, may testify as witness at present trial).
[12] ER 605 ("The judge presiding at the trial may not testify in that trial as a witness.").
[13] Miller v. Arctic Alaska Fisheries Corp., 133 Wash.2d 250, 261-62, 944 P.2d 1005 (1997); Thomas v. French, 99 Wash.2d 95, 104, 659 P.2d 1097 (1983); Spratt v. Crusader Ins. Co., 109 Wash.App. 944, 950, 37 P.3d 1269, review denied, 147 Wash.2d 1003, 53 P.3d 1007 (2002); Northington v. Sivo, 102 Wash.App. 545, 552, 8 P.3d 1067 (2000).
[14] In re Estate of Bachmeier, 147 Wash.2d 60, 64, 52 P.3d 22 (2002); Higgins v. Stafford, 123 Wash.2d 160, 166, 866 P.2d 31 (1994); In re Wittman's Estate, 58 Wash.2d 841, 844, 365 P.2d 17 (1961).
[15] CP at 68; CP at 11 (Finding of Fact 7).
[16] CP at 68; CP at 11 (Finding of Fact 7).
[17] In re Wittman's Estate, 58 Wash.2d at 844, 365 P.2d 17 ("The property covered by [a community property agreement] cannot be devised or bequeathed by will by either spouse while it remains in effect."); In re Brown's Estate, 29 Wash.2d 20, 29, 185 P.2d 125 (1947) (community property agreement not revoked by subsequent will); In re Estate of Catto, 88 Wash.App. 522, 527, 944 P.2d 1052 (1997) (property covered by community property agreement "cannot be devised or bequeathed by will by either spouse"), review denied, 134 Wash.2d 1017, 958 P.2d 313 (1998).
[18] See, e.g., Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wash.2d 692, 699, 952 P.2d 590 (1998); Lynott v. Nat'l Fire Ins. Co., 123 Wash.2d 678, 684, 871 P.2d 146 (1994); Dwelley v. Chesterfield, 88 Wash.2d 331, 335, 560 P.2d 353 (1977).