965 P.2d 1087 (1998)
136 Wash.2d 707
In re the MARRIAGE OF Victor P. HIMES, Deceased.
Frances A. HIMES, Petitioner,
v.
Janana MacINTYRE-HIMES, Respondent.
No. 65617-7.
Supreme Court of Washington, En Banc.
Argued May 12, 1998.
Decided October 29, 1998.
*1088 Kent Millikan, Everett, for Petitioner.
Christopher E. Fletcher, Blaine, for Respondent.
SMITH, Justice.
Petitioner Frances A. Himes seeks review of a decision by the Court of Appeals, Division I, which reversed a decision by the Snohomish County Superior Court granting Petitioner's motion to vacate a default dissolution decree obtained prior to his death by Victor P. Himes, deceased, granting Petitioner's motion for declaratory judgment that she is the lawful surviving spouse of Victor P. Himes and that the subsequent "remarriage" of Victor P. Himes to Respondent Janana MacIntyre Himes is invalid, and granting Petitioner's motion for summary judgment against Respondent Janana MacIntyre-Himes *1089 for relinquishment of United States Navy surviving spouse benefit payments she has received following the death of Victor P. Himes. We granted review. We reverse the Court of Appeals and affirm the trial court.

QUESTIONS PRESENTED
The questions presented in this case are:
(1) whether a superior court may vacate a dissolution decree after the death of Victor P. Himes, one of the parties to the marriage;
(2) whether evidence offered by Petitioner Frances A. Himes, the surviving party to the marriage, is sufficient to vacate a default dissolution decree for fraud; and (3) whether Petitioner Frances A. Himes was denied notice and an opportunity to respond to the default dissolution in violation of due process with the consequence that the judgment is void.

STATEMENT OF FACTS
Petitioner Frances A. Himes and Victor P. Himes were married in Oakland, Maryland on October 1, 1960.[1] They reared two children. Mr. Himes served in the United States Navy during most of the years of their marriage.[2] On October 20, 1973 Mr. Himes requested a Navy transfer to New Bethlehem, Pennsylvania because of illness in the family, stating that he had sent his "family and household goods back to Pennsylvania." The enlisted transfer and special duty request listed "RD # 3, New Bethlehem, Pennsylvania 16615" as the address and location of his dependents and household effects.[3]
The Himeses lived together at their home in New Bethlehem, Pennsylvania until 1975 when Mr. Himes was transferred by the Navy to the State of Washington. His wife and their two children remained in New Bethlehem, Pennsylvania at the same address. In 1982 the wife came to Oak Harbor, Washington and lived with her husband until they separated three months later. She returned to the family home at "Route 3, Box 251, New Bethlehem, Pennsylvania" where she continues to reside.[4] Although living separate and apart from her husband, Petitioner Frances A. Himes continued in the status of a Navy dependent, receiving a dependent's allotment and medical insurance coverage.[5]
After 30 years of service, Victor P. Himes retired from the Navy in 1984. Throughout his naval career, he authorized deductions from his salary for retirement and survivor benefit plan (SBP). The SBP provided that, in the event he died before his wife, she would receive an annuity as his surviving spouse.[6]
On September 1, 1987 Victor P. Himes filed a "do-it-yourself" form affidavit of service for summons by publication[7] in a petition for dissolution of marriage in the Snohomish County Superior Court. The affidavit stated he could not locate his wife, Frances A. Himes:[8]
I believe that the Respondent is not a resident of this state or if he (she) is in the State of Washington he (she) is concealing himself (herself) to avoid service of this Summons, herein. I have made careful *1090 inquiry of relations, friends and business associates of the Respondent and I cannot learn of his (her) present whereabouts after due diligence. I know of no address to which I could mail the Summons to the Respondent.
(Emphasis supplied).
A decree was granted by the Snohomish County Superior Court on December 21, 1987, ostensibly dissolving the marriage of Victor P. Himes and Petitioner Frances A. Himes. On that date a Court Commissioner signed a decree of dissolution of marriage, finding that "jurisdiction of the parties was obtained by [s]ervice of process or publication, and the Respondent has failed to appear herein."[9]
In 1988 Victor P. Himes met Janana McIntyre.[10] They were married on July 31, 1993 in Whatcom County, Washington.[11] On August 14, 1994 Mr. Himes died. His certificate of death named "Janana Malmgren" as his surviving spouse.[12] In his will dated July 27, 1994, Victor P. Himes named his "spouse, Janana J. MacIntyre" as sole beneficiary and administrator of his estate.[13] Upon Mr. Himes' death, Ms. Janana MacIntyre-Himes began receiving monthly annuity payments of $514.00 to $528.00 from the Navy as his surviving spouse.[14]
Petitioner Frances A. Himes first learned of the 1987 dissolution in March 1994 when the Navy informed her it had terminated her medical insurance. Until that time, she had remained a medical dependent of her husband. The Navy had always used her address which had not changed in the past 21 years.[15]
In a letter from the Department of Defense dated March 15, 1995, Tim Zelenak of Technical Section, Retired Pay Operations, responded to a request from Petitioner Frances A. Himes' attorney concerning the date Victor P. Himes notified the Navy of a change in his marital status:[16]
A review of his record does not reflect this action on the member's part. In all probability, the dissolution of his first marriage and subsequent marriage was discovered as part of the certification process required to establish the beneficiary's eligibility for these [surviving spouse] benefits.
On December 23, 1994, Petitioner Frances A. Himes filed a motion to vacate the dissolution decree in the Superior Court of Snohomish County under Civil Rule (CR) 60(b),[17] claiming that Victor P. Himes obtained the dissolution through fraud[18] and that it *1091 was void because the court had no jurisdiction.[19] By letter to counsel dated February 28, 1995, Commissioner Arden J. Bedle denied Petitioner's motion to vacate the dissolution decree:[20]
I find that the passage of time should prevent the motion to vacate to be granted. Even if there is some defect in the jurisdiction of the Court, and the Decree deemed void, there can still be waiver or estoppel... In the case at bar, the long separation with no contact, and no action taken by the moving party to find the decedent, constitutes grounds to find that she be estopped from attempting to vacate the Decree, even if it is void.
I find that setting aside the decree is contrary to public policy in that it would "undivorse" [sic] the decedent. In setting aside a dissolution default decree which would "undivorse" [sic] the parties ... Among other reasons, this public policy is meant to protect the innocent new spouse.
In a declaration filed in the Snohomish County Superior Court on December 23, 1994, Ms. Keitha Hetrick, sister of Victor P. Himes, stated that her brother was at all times aware of her home address in Bethlehem, Pennsylvania where she had lived for the past 23 years:[21]
I live at Route 3, Box 200, Bethlehem, Pennsylvania, near the address of his wife, Frances A. Himes. I have known where Frances A. Himes has lived for at least the past 21 years. She has been living at Route 3, Box 251, New Bethlehem, Pennsylvania, 16242, since 1973.
At no time was I ever contacted by my brother, Victor Paul Himes, nor anyone else on his behalf, requesting information on the whereabouts or address of Frances A. Himes, nor did I ever learn of any divorce proceedings that he had filed until I was so informed this year, 1994, by my sister-in-law, Frances A. Himes.
In a declaration filed in the Snohomish County Superior Court on March 10, 1995, Ms. Robyn E. Himes, daughter of Victor P. and Frances A. Himes, stated she remained in contact with her father after her parents separated in 1982 and that he did not contact her in 1987 before he filed the affidavit claiming he did not know the whereabouts of his wife, her mother:[22]
In 1987, I received no phone call, nor letter, nor other contact from my father, Victor Himes, attempting to locate my mother, Frances Himes. My father knew my address during that year from the letters I wrote him. He never notified me that he had obtained a divorce from my mother in 1987.
After his death in August, 1994, I received a phone call from Janana MacIntyre Himes informing me of his death. She told me she had gone to his apartment and looked through his letters and correspondence and found my address, and had also found the address of his sister, Ketha Hettrick, [sic] whom she tried to contact also.
On April 14, 1995, Petitioner filed a motion for revision of the commissioner's decision.[23] By memorandum dated June 9, 1995 the Honorable David F. Hulbert granted revision of Commissioner Bedle's decision:[24]
The Commissioner seems to suggest that knowledge of the divorce should be implied to Wife # 1 simply because of the length of her separation. However, the mere fact that Wife # 1 and Husband were separated for many years has no bearing on their legal relationship as husband and wife. Why should Wife # 1 assume that she was being divorced simply because of the passage of time (especially when, as she alleges, Husband knew her whereabouts)?
The reasonable time analysis should begin to run when Wife # 1 actually learned of the divorce. She filed a Motion to Vacate within eight months of learning of the *1092 divorce; that appears reasonable. Therefore, the time limits of CR 60(b) are not a bar to Wife # 1's Motion to Vacate.
In granting the motion for revision, Judge Hulbert concluded "the controversy was not extinguished when Victor Himes died, and Frances Himes may proceed with a Motion to Vacate the Decree of Dissolution." On June 27, 1995, Respondent Janana MacIntyre-Himes filed a motion for reconsideration[25] which Judge Hulbert denied on June 29, 1995.[26]
On July 25, 1995, Judge Hulbert signed an order vacating the decree of dissolution. Concluding that the death of Victor P. Himes did not preclude vacation of the dissolution decree, the court directed "Janana MacIntyre Himes to pay into the registry of the court all military pension proceeds or other funds she receives as a surviving spouse, ... commencing July 1, 1995."[27]
On August 3, 1995, Respondent Janana MacIntyre-Himes filed a notice of appeal which was received by the Court of Appeals, Division I, on August 8, 1995. On August 15, 1995, Petitioner Frances A. Himes filed a notice of cross-appeal.[28]
While the decision of the Court of Appeals was pending, Petitioner Frances A. Himes on January 25, 1996 filed a motion for summary judgment and declaratory judgment in the Snohomish County Superior Court.[29] On March 14, 1996 the Honorable Gerald L. Knight granted her motion, finding there was no genuine issue of material fact after Judge Hulbert's order vacating the December 21, 1987 dissolution decree:[30]
....
2. Respondent Frances A. Himes is the lawful surviving spouse of Victor P. Himes, deceased, and the subsequent "remarriage" of Victor P. Himes to Janana Macintyre-Himes, the Third Party Defendant, was invalid.
3. Respondent Frances A. Himes is entitled to receive the U.S. Navy Retirement SBP on the account of Victor P. Himes, deceased.
4. Respondent is hereby awarded judgment against Janana Macintyre-Himes, the Third Party Defendant, for the amount of all such Navy SBP payments previously received by her through the month of June 1995, in the total sum of $5,224.00, plus interest from July 1, 1995 through March 1, 1996, in the amount of $417.92 and continuing to accrue from March 2, 1996 until paid at the statutory rate of 12% per annum, together with her statutory attorney fees of $125.00 and statutory costs of $42.50 service of process.
In an unpublished opinion, the Court of Appeals, Division I, on May 5, 1997 reversed the trial court's decision:[31]
We must adhere to the ruling in the seminal case of Dwyer v. Nolan,[32] and its progeny. Thus, we are required to reverse. After the death of either of the parties the subject matter of dissolution action is eliminated, the action abates, and the surviving spouse cannot move to vacate. This is so despite the fact that Victor obtained the decree by default after filing a false affidavit to the effect that Frances could not be located.... This action was framed only as one for vacation for the decree of divorce to indirectly allow Frances benefits by virtue of the resulting reinstatement of her marital status at the time of Victor's death. This we cannot allow. Despite Victor's false affidavit, the family court had in rem jurisdiction to dissolve the marriage.[33] The decree obtained is thus voidable, not void as Frances *1093 contends. This voidable status of the decree results in abatement on the death of one of the parties as is the case here. This result preserves the validity of Victor's second marriage, an important policy under Washington law.
Petitioner Frances A. Himes sought discretionary review which this Court granted on December 5, 1997.

DISCUSSION
Petitioner Frances A. Himes contends that Victor A. Himes, deceased, in 1987 prior to his death obtained a purported decree of dissolution of their marriage in the Snohomish County Superior Court by filing a false affidavit of service by publication. She argues that she did not have notice of or an opportunity to respond to the default dissolution. She concludes that consequently the dissolution is void because the court had no jurisdiction over the parties.
Respondent Janana MacIntyre-Himes asserts that Washington courts have long held that a dissolution action abates upon the death of one of the parties unless the decree involved the rights of third parties. She argues the court had in rem jurisdiction to dissolve the marriage because Victor P. Himes properly served Petitioner by publication. Respondent contends that Petitioner's evidence to support her claim of fraud is inadmissible under the "dead man's statute" which precludes testimony concerning conversations and transactions with a deceased person. She concludes that upon the death of Victor P. Himes the court had no authority to vacate the 1987 default dissolution decree.

VACATING DISSOLUTION DECREE AFTER DEATH OF A PARTY
Petitioner asserts that Washington is the only state that precludes courts from vacating a dissolution decree after the death of one of the parties.[34] She urges this Court to reconsider this position which was first established by the Court in 1905 in Dwyer v. Nolan.[35]
In Dwyer, after the death of her former husband, the wife sought to vacate their dissolution decree, contending that the superior court acted without jurisdiction and the judgment was therefore void. This Court denied her motion to vacate the judgment:[36]
We will not enter into an investigation of the question presented as to whether or not the service in the divorce proceeding was sufficient to give the court jurisdiction of the person of the defendant, for the reason that there are no proper parties to this proceeding, and in the nature of things, the plaintiff having died, that the question of divorce cannot be relitigated. It will not be gainsaid that an action for divorce is a purely personal action. Nothing is sought to be affected but the marital status of the husband and wife. The distribution of property in such an action is incidental, and it is clearly incontestable that upon the death of either party, whether before or after the decree, the subject of the controversy is eliminated.
Petitioner argues that the Court almost a century ago established this "ill-conceived, shortsighted, and harsh rule" unaware of its effect on future cases like this where marital status determines annuity rights and relief can be granted only by vacating the dissolution decree. Petitioner asserts that, given the increasing prevalence of surviving spouse benefit plans offered under federal, state, and private annuities, dissolutions are no longer "purely personal actions" because they involve substantial property rights.
Petitioner asserts that in Osborne v. Osborne,[37] in which the wife sought to vacate a *1094 dissolution decree primarily on the basis of fraud, this Court invited reexamination of the rule in a future and proper case:
It may be that this rule is harsh and is more restrictive than the rule in other jurisdictions. There may be good reasons why this court should reconsider the rule and perhaps modify it. But if such reasons exist, they have not been presented in the appellant's brief, and we therefore do not feel called upon to go in search of them at this time.
Another reason why this court is reluctant to view the present case as a proper one in which to reexamine the rule that has been laid down regarding the vacation of a divorce decree after death of a party, is that the appellant's affidavit does not allege facts which clearly show that the decree was fraudulently obtained.
Petitioner argues that those "good reasons" for reexamination of the rule exist in this case because Victor P. Himes obtained the dissolution decree by filing a false affidavit. She asserts that, although the court did not distribute any physical property, the dissolution nevertheless deprived her of surviving spouse benefits, a property interest of considerable value. According to Petitioner, she had no notice of nor an opportunity to respond to the dissolution with the consequent violation of her constitutional due process rights.
Petitioner contends that in all other reported jurisdictions, courts may vacate a dissolution after the death of one of the parties based upon equitable principles.[38] She cites the Maryland case of Connelly v. Connelly,[39] which also involved entitlement to Navy pension benefits. In that case, the wife filed a motion to vacate a dissolution decree 26 months after she discovered her former husband had obtained the decree through fraud. The court vacated the decree even though the husband had since remarried and died, holding that "[l]apse of time will not bar relief where circumstances exist which excuse the delay and render it inequitable to interpose the bar."[40]
According to Petitioner, the facts in this case justify reexamining and overruling Dwyer and Crockett and adopting the more flexible rule announced in the Restatement of the Law, Conflict of Laws 2d, §74:[41]
A person may be precluded from attacking the validity of a foreign divorce decree if, under the circumstances, it would be inequitable for him to do so.
Petitioner asserts that a corollary to this rule is the courts should decide on equitable grounds whether to vacate a dissolution decree after death of one of the parties.
Petitioner argues that, in weighing the equitable factors in this case, Respondent's assertions are "hardly worthy of much weight on the scales of justice." Petitioner contends she is an innocent victim of fraud who did not learn of the 1987 default dissolution decree until March 1994 and then only after she was notified by the Navy that it had terminated her dependent's medical benefits. Petitioner argues that, even after their separation *1095 in 1982, she remained in contact with her husband and remained a Navy dependent spouse and therefore had no reason to suspect her husband had obtained a dissolution of their marriage. Petitioner asserts that she filed a petition to vacate the decree within eight months after learning of the dissolution and her proceeding should not therefore be subject to the equitable defenses of laches and estoppel.
Petitioner points out that there are no children from her husband's marriage to Respondent MacIntyre-Himes, who was married to Victor P. Himes only for a year, the minimum eligibility time for a surviving spouse annuity under federal law. Petitioner asserts that Respondent was apparently self-supporting before she married Mr. Himes. She argues that vacating the decree would not "inequitably disturb [Respondent's] interest of reliance on the judgment."
Petitioner asserts that she was married to Mr. Himes for 27 years prior to the 1987 dissolution, reared their two children, faithfully remained his wife, and received and expected to continue to receive dependent spouse benefits from the Navy. She emphasizes that she manages a fabric shop and upon retirement she would have no other income than Social Security benefits.
Citing Dwyer v. Nolan,[42] Respondent argues that under controlling Washington decisions, the death of Victor P. Himes on August 14, 1994 deprived the court of jurisdiction to vacate the dissolution decree. Citing McPherson v. McPherson, Respondent argues that this Court has long held that "an action for divorce proper, being purely a personal action based upon personal relationship and status of marriage, terminates with the death of either spouse, not only because of its personal character, but because the marriage is ipso facto dissolved by death."[43]
In McPherson, the trial court entered an interlocutory divorce decree in favor of the wife and settled the property rights of the parties. The husband appealed the interlocutory order. The wife died before the court entered a final divorce decree. The executor for the wife's estate argued that the interlocutory decree with respect to property rights did not abate upon the death of the wife. The Court stated that it has "long recognized the rule that where the main purpose of a divorce action fails, any property settlement made therein, being only ancillary to and dependent upon the main purpose, also fails."[44] The Court concluded it did not have authority to "reverse, modify, or affirm an interlocutory decree of divorce, after the death of one of the parties to such decree, except where the rights of third parties were involved in the decree itself, and then only for the purpose of adjudicating the rights of such third persons."[45]
Respondent argues that although McPherson involved an interlocutory decree, the Court adhered to the same ruling in Crockett v. Crockett[46] which involved a final decree. In Crockett, the husband sought a divorce while the wife was confined in a mental institution. The court granted the interlocutory decree and approved a property settlement agreed to by the wife's guardian ad litem. The wife died seven years after the court entered a final decree of divorce. As administrator of his mother's estate, decedent's son brought a motion to vacate the divorce decree claiming it was void for fraud. The Court determined there was no evidence in the record supporting fraud and, because the son was not a party to the divorce action, he was not a "proper party plaintiff." The Court concluded that
[T]he final decree of divorce in its entirety is a valid and binding decree, settling the rights of the parties thereto, which decree cannot be vacated by the administrator of Mrs. Crockett's estate after *1096 her death. In other words, the divorce action being purely a personal one, and one of the parties having died, the subject matter of the action has ceased to exist....
Respondent MacIntyre-Himes contends she is an innocent new spouse who relied upon the validity and finality of her husband's dissolution decree. She emphasizes that Petitioner and Mr. Himes separated in 1982, the dissolution decree was entered in 1987, she and Mr. Himes married in 1993, and Petitioner did not file her motion to vacate the decree until 1994. According to Respondent, the lapse of timetwelve years after separation and seven years after dissolutionestops Petitioner from challenging the validity of the 1987 default decree. Respondent argues that Petitioner is precluded from relief under CR 60(b) which states that motions for vacating judgments "shall be made within a reasonable time" and Restatement of the Law 2d, Judgments 2d, § 74[47] which states that relief will be denied if barred by lapse of time or inequitable disturbance of an interest of reliance on the judgment.
Respondent contends that because she is only employed as a part-time bookkeeper/receptionist, she would face "extreme financial hardship" without the Navy annuity benefits. She asserts that Commissioner Bedle correctly concluded that "setting aside the decree is contrary to public policy in that it would undivor[c]e the decedent.... Among other reasons, this public policy is meant to protect the innocent new spouse."
The trial court disagreed with Commissioner Bedle and vacated the judgment for fraud under CR 60(b)(4). Distinguishing Dwyer and Crockett, Judge David F. Hulbert stated he was persuaded by "musings of the court in Osborne":[48]
While Wife was alleging fraud in the Osborne case as well, it is apparent that the court did not find her facts particularly strong. The Osborne court indicated that the issue should be revisited on the right facts ... the right facts exist here. The court rules that the controversy was not extinguished when Victor Himes died, and Frances Himes may proceed with a Motion to Vacate the Decree of Dissolution.
The Court of Appeals reversed the trial court, holding that it "must adhere to the ruling in the seminal case of Dwyer v. Nolan, and its progeny."
The United States Supreme Court, however, has held that a divorce decree pending appeal does not abate upon the death of a party when property rights are involved. In Bell v. Bell,[49] the husband obtained a divorce decree in Pennsylvania by falsely stating he was a resident of that state. The wife brought a petition for divorce and alimony in the Supreme Court of New York where she resided, asserting that the Pennsylvania court did not have jurisdiction to grant her husband a divorce. The New York Court of Appeals upheld the decision of the New York Supreme Court that the Pennsylvania court lacked jurisdiction, and granted the wife's action for divorce and alimony. The husband obtained review by the United States Supreme Court, but died before its decision was announced. The Supreme Court affirmed the ruling of the New York Court of Appeals, stating that the judgment was not only for divorce but was for a large sum of alimony:
The wife's rights to such alimony and costs, though depending on the same grounds as the divorce, are not impaired by the husband's death, should not be affected by the delay in entering judgment here while this court has held the case under advisement, and may be preserved *1097 by entering judgment nunc pro tunc as of the day when it was argued.
It is true that this Court has long held that a dissolution action abates upon the death of one of the parties unless the rights of third parties are involved in the dissolution. We have rejected the general rule followed in virtually all other jurisdictions that during the time an appeal is pending or during the time when an appeal may be taken, a divorce or dissolution action abates with respect to marital status of the parties but does not abate with respect to property interests affected by the decree.[50]
As this Court observed in Osborne, "[i]t may be that this rule [established in Dwyer] is harsh and is more restrictive than the rule in other jurisdictions."[51] We believe the facts in this case justify our reconsideration of the rule in Dwyer on equitable grounds.

ADMISSIBILITY OF EVIDENCE UNDER "TRANSACTION WITH DECEASED PERSON" STATUTETE
Under RCW 5.60.030,[52] the "transaction with deceased person" statute, sometimes referred to as the "dead man's statute,"[53] as a party in interest,[54] Petitioner Frances A. Himes is precluded from testifying on her own behalf about any transactions[55] or conversations with Victor P. Himes, the deceased. In vacating the dissolution decree for fraud, the trial court considered the following evidence offered by Petitioner Frances A. Himes, finding the evidence was not precluded by the statute:
a. Wife # 1 has had the same permanent address and residence for 21 years.
b. Wife # 1 remained a medical dependent with the Navy until 1994, and the Navy knew her address.
c. Husband's sister, who has been Wife # 1's neighbor for 23 years, was not contacted by Husband in an attempt to locate Wife # 1.
d. Husband and Wife # 1's daughter, who was in contact with both parents, was never asked by Husband about Wife # 1's whereabouts.
e. Wife # 1's residence address is the same address Husband put in his Navy transfer request in 1973.
Respondent argues that the only admissible evidence offered by Petitioner is Victor P. Himes' transfer request to the Navy which, standing alone, has no probative value and is irrelevant. Respondent asserts that all other evidence offered by Petitioner is prohibited by RCW 5.60.030, the transaction with deceased person statute, because if Victor P. Himes were living he could contradict the evidence.[56] Respondent contends the "purpose of the statute is to prevent interested *1098 parties from giving self-serving testimony regarding conversations or transactions with a decedent."[57]
Citing Hampton v. Gilleland,[58] Respondent asserts that the statute precludes the third-party declarations of Ms. Robyn E. Himes and Ms. Keitha Hetrick. According to Respondent, this Court determined that the transaction with deceased persons statute precludes testimonial evidence offered by a party in interest even though the person testifying is merely a witness and not an interested party. In Hampton, the father deeded land to his seven children. Upon his death, the children filed a partition action. One daughter resisted the partition, asserting that the father promised her all the land in return for caring and providing for him. She called as a witness her brother, who was one of the grantees and therefore an adverse party. The trial court excluded his testimony under RCW 5.60.030 and this Court upheld the decision, ruling that "if the evidence offered describes transactions with, or relates statements made by, the deceased grantor to the witness, or in the latters' presence, such evidence was properly excluded provided it was offered by one whose interest or claims were adverse to the decedent, or, we should add, to persons claiming under the decedent's deed."[59]
Petitioner distinguishes Hampton because the witness was a party in interest. She argues that RCW 5.60.030 precludes only the testimony of parties in interest about a transaction with decedent and therefore the trial court properly admitted the declarations of Ms. Robyn E. Himes and Ms. Keitha Hetrick, third parties who are not parties in interest, citing Tegland, 5A Washington Practice, Evidence, § 213:[60]
... [RCW 5.60.030] bars testimony by a "party in interest or to the record" about a transaction with the deceased ....the courts ... have held that the statute bars only the testimony of an interested party.
In general, a witness is considered an interested party (1) if the witness stands to either gain or lose as a direct result of the judgment, or (2) if the record may be used as evidence against the witness in some other action. The witness will be considered interested only if a witness's interest is present, certain, and vested. An interest that is uncertain, remote or contingent is insufficient to bar the witness's testimony.
The trial court properly determined the transaction with deceased person statute does not preclude the declarations of Ms. Robyn E. Himes and Ms. Keitha Hetrick.[61] The record supports the trial court's finding that Petitioner Frances A. Himes had the same address for 21 years, the address which Victor P. Himes noted on his Navy transfer request in 1973, and Frances A. Himes remained a Navy dependent until 1994 when the Navy contacted her at that address. There was sufficient evidence upon which the trial court could conclude that Victor P. Himes fraudulently obtained the 1987 default dissolution decree by filing a false affidavit of service.

DENIAL OF CONSTITUTIONAL RIGHT TO DUE PROCESS
Petitioner argues that she has been denied constitutional due process guaranteed by the Fourteenth Amendment[62] because *1099 she did not receive notice of nor have an opportunity to respond to the 1987 dissolution and has consequently been deprived of surviving spouse benefits from the Navy. She argues the service by publication in this case was invalid because Victor P. Himes filed a false affidavit and the trial court therefore did not have jurisdiction of the parties. Petitioner asserts that the judgment is void for lack of jurisdiction[63] and a motion to vacate the decree could therefore be brought at any time.[64]
Petitioner asserts that both the trial court[65] and the Court of Appeals erred in concluding the decree was voidable and not void. Citing Wenatchee Reclamation Dist. v. Mustell,[66] which relied on Mullane v. Central Hanover Bank & Trust Co.,[67] Petitioner contends that regardless whether the trial court had in rem or in personam jurisdiction, the service by publication was invalid because Victor P. Himes knew the New Bethlehem, Pennsylvania home address at which she had been living for 21 years and made no effort to serve her there. In Wenatchee, this Court observed that prior to Mullane, due process rights tended to vary depending on whether an action was in rem or in personam:
Personal service was considered essential when a state court based its jurisdiction upon its authority over a defendant's person; constructive notice to nonresidents satisfied the requirements of due process when jurisdiction was based upon the court's authority over property within its territory....The Mullane Court, however, rejected this distinction between in rem and in personam actions for purposes of determining the sufficiency of notice, stating "we think that the requirements of the Fourteenth Amendment ... do no depend upon a classification for which the standards are so elusive ..." 339 U.S. at 312, 70 S.Ct. 652.
In subsequent cases, the Supreme Court has adhered to the principle announced in Mullane.... Notice by publication and posting is constitutionally inadequate where the name and address of the owner are known or can be discovered ... with minimal effort; personal service or mailed notice is required.
Petitioner concludes that because the judgment is void, "the trial court has a nondiscretionary duty to grant relief"[68] by vacating the judgment under CR 60(b)(5) and thus the judgment has no effect and the "rights of the parties are left as though the judgment had never been entered."[69]
Respondent argues that the judgment is voidable and not void because the trial court had in rem jurisdiction to grant the dissolution based on proper service by publication. Respondent contends that Petitioner's due process argument "embellishes" the distinction between void and voidable with "constitutional import." According to Respondent, principles of equity, and not constitutional law, determine whether a judgment is void or voidable.[70]
Respondent asserts that the Court of Appeals correctly concluded that "[t]he decree obtained is thus voidable, not void as Frances contends. This voidable status of *1100 the decree results in abatement on the death of one of the parties as is the case here. This result preserves the validity of Victor's second marriage, an important policy under Washington law." Respondent contends that the decision of the Court of Appeals recognizes a strong public interest in maintaining the finality and integrity of dissolution decrees to protect interests of reliance on the judgment. Respondent cautions that allowing courts to vacate decrees after the death of one of the parties would open a "Pandora's box" of vacated judgments.
Relying on In re Marriage of Johnston,[71] the Court of Appeals in this case held that "[d]espite Victor's false affidavit, the family court had in rem jurisdiction to dissolve the marriage." In Johnston, the husband had moved to an unknown location in another state. The wife published a summons in the newspaper and obtained a default decree of dissolution and an order of child support. The court determined the notice by publication was sufficient compliance with RCW 4.28.100 for a dissolution decree because it concerned in rem action affecting the status of the marital relationship, but not sufficient where additional relief is sought requiring in personam jurisdiction, such as support. There was no false affidavit in Johnston. In this case Victor P. Himes filed a false affidavit which did not comply with the service by publication statute, RCW 4.28.100. "Notice by publication and posting is constitutionally inadequate where the name and address ... are known or can be discovered ... with minimal effort; personal service or mailed notice is required."[72]

EQUITABLE INTEREST OF SURVIVING PUTATIVE SPOUSE
Respondent Janana McIntyre-Himes in good faith and without complete knowledge entered into a marriage with Victor P. Himes more than 5 years after the purported dissolution which we now determine was invalid. Under the facts of this case she is the surviving "putative" wife of the deceased Victor P. Himes and Petitioner Frances A. Himes is the surviving "legal" wife. In overruling Dwyer, however, we do not intend to deny relief to a surviving putative spouse without recognizing the inherent power of the court to balance the equitable interests of a putative wife and a legal wifeboth of whom are innocent parties in this case.
This court has previously ruled a putative wife has equitable interests in the common property acquired during an illegal marriage.[73] In Brenchley Elizabeth Brenchley married Richard Brenchley three weeks after he divorced his first wife. The law at that time prohibited remarriage within six months of a divorce.[74] The new wife was not aware her marriage was void because it was entered too soon after her husband's divorce. The Brenchleys lived together as husband and wife for 26 years. During that time, the wife helped run a boarding house, and also worked other jobs to help make payments on properties acquired by her and her husband.[75]
All of the property stood in Mr. Brenchley's name at the time of his death. The sons from his first marriage after their father's death sought to claim all of his property. The probate court recognized the invalidity of his marriage to Mrs. Elizabeth Brenchley, but nevertheless awarded one-half of the property to her because all of it had been acquired during her putative marriage to Richard Brenchley. This Court upheld the award on equitable grounds because Mrs. Elizabeth Brenchley was an innocent party and had an equitable interest in one-half of the property acquired during the invalid marriage.[76]
The common law equitable principles applied in Brenchley are mirrored in several restatements of the law. The Restatement (Second) of Conflict of Laws § 74 (1971) provides that "[a] person may be precluded *1101 from attacking the validity of a foreign divorce decree if, under the circumstances, it would be inequitable for him to do so." Comment b to the rule states, "[s]uch inequity may exist when action has been taken in reliance on the divorce or expectations are based on it...." This comment supports protection by a court of the interests of a surviving putative spouse.
The Restatement (Second) of Judgments § 68 (1982), entitled "Fraud, Mistake, and Other Grounds for Relief from Default Judgment," states:
Subject to the limitations stated in § 74, a judgment by default may be avoided if the judgment:
...
(2) Was based on a claim that the party obtaining the judgment knew to be fraudulent[.]
This quoted section is applicable to the facts of this case. Mr. Himes obtained a default dissolution decree by fraudulently stating he had made efforts to, but could not, locate his wife. This fraudulent claim is a ground for attacking the dissolution decree under §§ 68 and 74 of the Restatement. We adopt Restatement (Second) of Judgments §§ 68 and 74 under the facts of this case.
Subsection (3) of § 74 presents the determinative rule for this case: When a trial court finds cause to vacate a decree of divorce or dissolution, the court must determine whether an interest of reliance upon that decree, such as a surviving putative spouse's interest, should be protected. If the putative spouse has valid interests, such as rights to property jointly accumulated during the putative marriage, then the trial court must shape and balance the relief to protect the interests of both the putative spouse and the legal spouse.
Because there were minimal assets in Mr. Himes' estate, there is no need to remand for a factual inquiry into Respondent MacIntyre-Himes' equitable property interests. The record mentions no assets which were jointly acquired by decedent and Respondent MacIntyre-Himes during their 13-month marriage. Mr. Hime's enrollment in the United States Navy survivor benefit plan occurred prior to his marriage to Respondent MacIntyre-Himes. Because the only asset in the estate is this benefit plan, and because Respondent MacIntyre-Himes has demonstrated no equitable interest in the benefit plan payments, Petitioner Francis A. Himes, as the surviving legal wife of Victor P. Himes, is entitled under federal law to the Navy survivor benefit plan payments.

SUMMARY AND CONCLUSIONS
Since Dwyer v. Nolan, decided in 1905, Washington courts have almost slavishly adhered to the rule that unless a dissolution decree involves a third party, the action abates upon the death of one of the parties. In that case the Court reasoned that "an action for divorce is a purely personal action" and "[n]othing is sought to be affected but the marital status of the husband and wife."[77]
In this case, the dissolution decree affects Petitioner Frances A. Himes' entitlement to surviving spouse benefits from the Navy, a substantial property interest. The Himeses were married in 1960, reared their two children, and Victor P. Himes served in the United States Navy during most of the time of their marriage. Separated from Petitioner since 1982, Mr. Himes retired from the Navy in 1984, obtained a default dissolution decree in 1987, married Respondent Janana MacIntyre-Himes in 1993, and died in 1994. Petitioner Frances A. Himes was unaware of the 1987 dissolution decree until March 1994 when the Navy informed her it had terminated her medical insurance. She had remained a Navy dependent until that time. She filed a motion to vacate the default decree in December 1994 within a reasonable time after she learned of the 1987 Snohomish County Superior Court dissolution.
The Navy determined that, as the surviving spouse, Respondent Janana MacIntyre-Himes, who was married to Victor P. Himes on July 31, 1994, was entitled to the annuity benefits under the survivor benefit plan arising out of Victor P. Himes' 30 years of *1102 service in the Navy. Respondent was married to him for a year prior to his death on August 14, 1994, the minimum eligibility time for surviving spouse benefits under federal law. There were no children born of their marriage.
Petitioner Frances A. Himes and Victor P. Himes were married on October 1, 1960. Petitioner was unquestionably married to Mr. Himes for 22 years; ostensibly married to him for 27 years; and arguably married to him for 34 years until the date of his death in 1994.
Petitioner presented evidence that Victor P. Himes obtained the dissolution by filing a false affidavit of service by publication in the Snohomish County Superior Court. RCW 5.60.030, the transaction with deceased person statute, does not preclude testimony by third parties who are not parties in interest.[78] In vacating the default decree for fraud, the trial court properly considered the evidence from third parties.
Victor P. Himes filed a false affidavit for service by publication in his dissolution action in 1987. Under CR 60(b)(4), the court may vacate the dissolution for fraud, misrepresentation, or misconduct. Additionally, "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[79] Victor P. Himes at all times knew Petitioner Frances A. Himes' address. His purported service by publication, based upon the false claim he did not know his wife's whereabouts and could not with diligence locate her, was invalid.[80] Consequently, the court did not have jurisdiction over the parties and the default decree entered in the Snohomish County Superior Court on December 21, 1987 is void.[81]
We overrule the 1905 decision in Dwyer v. Nolan which established the principle that death of one party to a divorce or dissolution proceeding eliminates the subject matter of the action, and reverse the Court of Appeals which reversed the decision of the Snohomish County Superior Court granting Petitioner Frances A. Himes' motion to vacate the default dissolution decree. We affirm the decision of the trial court.
DURHAM, C.J., and DOLLIVER, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] Clerk's Papers at 64.
[2] Clerk's Papers at 57-59.
[3] Clerk's Papers at 66-67.
[4] Clerk's Papers at 58-59.
[5] Clerk's Papers at 24 and 59.
[6] Clerk's Papers at 24 and 61.
[7] RCW 4.28.100 Service of summons by publicationWhen authorized. When the defendant cannot be found within the state, and upon the filing of an affidavit of the plaintiff, his agent, or attorney, with the clerk of the court, stating that he believes that the defendant is not a resident of the state, or cannot be found therein, and that he had deposited a copy of the summons (substantially in the form prescribed in RCW 4.28.110) and complaint in the post office, directed to the defendant at his place of residence, unless it is stated in the affidavit that such residence is not known to the affiant, and stating the existence of one of the cases hereinafter specified, the service may be made by publication of the summons, by the plaintiff or his attorney in any of the following cases:

....
(4) When the action is for divorce in the cases prescribed by law;
....
[8] Clerk's Papers at 122.
[9] Clerk's Papers at 31-36, Decree for Dissolution of Marriage.
[10] Clerk's Papers at 28, Declaration of Janana MacIntyre-Himes at 1.
[11] Clerk's Papers at 37.
[12] Clerk's Papers at 41.
[13] Clerk's Papers at 39.
[14] Clerk's Papers at 193, Deposition of Janana MacIntyre-Himes at 38.
[15] Clerk's Papers at 89, Order Vacating Decree of Dissolution at 3.
[16] Clerk's Papers at 157.
[17] RULE 60. RELIEF FROM JUDGMENT OR ORDER

....
(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
....
(4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
(5) The judgment is void;
(7) If the defendant was served by publication, relief may be granted as prescribed in RCW 4.28.200;
(11) Any other reason justifying relief from the operation of the judgment.
The motion shall be made within a reasonable time and for reasons (1), (2) or (3) not more than 1 year after the judgment, order, or proceeding was entered or taken.
[18] See Black's Law Dictionary, 661, (6th ed. 1990) ("Extrinsic fraud. Fraud which is collateral to the issues tried in the case where the judgment is rendered. Type of deceit which may form basis for setting aside a judgment as for example a divorce granted ex parte because the plaintiff-spouse falsely tells the court he or she is ignorant of the whereabouts of the defendant spouse.").
[19] Clerk's Papers at 75, Respondent's Motion to Vacate Decree at 5.
[20] Clerk's Papers at 26-27.
[21] Clerk's Papers at 55-56.
[22] Clerk's Papers at 22.
[23] Clerk's Papers at 95.
[24] Clerk's Papers at 4.
[25] Clerk's Papers at 82.
[26] Clerk's Papers at 94.
[27] Clerk's Papers at 87-92.
[28] Clerk's Papers at 126.
[29] Clerk's Papers at 188.
[30] Clerk's Papers at 202.
[31] Petition for Review.
[32] 40 Wash. 459, 460-61, 82 P. 746 (1905); Crockett v. Crockett, 27 Wash.2d 877, 892 181 P.2d 180 (1947); Osborne v. Osborne, 60 Wash.2d 163, 166, 372 P.2d 538 (1962).
[33] Cf. In re Marriage of Johnston, 33 Wash.App. 178, 179, 653 P.2d 1329 (1982).
[34] See Francis M. Dougherty, Annotation, Effect of Death of Party to Divorce Proceeding Pending Appeal or Time Allowed for Appeal, 33 A.L.R.4th 47, 51 (1984) ("Washington has rejected the traditional rule followed in virtually all of the other jurisdictions, and has developed the view that an appeal from a divorce proceeding abates upon the death of one of the parties unless the rights of third persons are adversely affected by the divorce decree.").
[35] 40 Wash. 459, 82 P. 746 (1905). See also Crockett v. Crockett, 27 Wash.2d 877, 181 P.2d 180 (1947).
[36] 40 Wash. at 460-61, 82 P. 746.
[37] 60 Wash.2d 163, 166, 372 P.2d 538 (1962).
[38] See Francis M. Dougherty, Annotation, Effect of Death of Party to Divorce Proceeding Pending Appeal or Time Allowed for Appeal, 33 A.L.R.4th 47 (1984); Annotation, Vacating or Setting Aside Divorce Decree for Remarriage of Party, 17 A.L.R.4th 1153 (1982); Gregory G. Sarno, Annotation, Estoppel or Laches Precluding Lawful Spouse from Asserting Rights in Decedent's Estate as Against Putative Spouse, 81 A.L.R.3d 110 (1977).
[39] 190 Md. 79, 57 A.2d 276, 279 (1948).
[40] See also Dierkes v. Dierkes, 165 W.Va. 425, 268 S.E.2d 142 (W.Va.1980) ("The decree in question here was void because the court lacked jurisdiction due to insufficient service of process and a void judgment or decree is a mere nullity and may be attacked at any time."); Lindley v. Lindley, 274 Ala. 570, 150 So.2d 746 (Ala. 1963) (death of a spouse who has fraudulently obtained a divorce does not deprive a court of power to set aside such divorce); Sousa v. Freitas, 10 Cal.App.3d 660, 89 Cal.Rptr. 485 (1970) ("A judgment is properly challenged in equity when it is claimed to have been rendered without legal service of process or legal notice to a defendant.").
[41] See also Gregory G. Sarno, Annotation., Estoppel or Laches Precluding Lawful Spouse from Asserting Rights in Decedents's Estate as Against Putative Spouse, 81 A.L.R.3d 110, 117 ("The judiciary has taken a flexible and fact-oriented approach to the questions of estoppel and laches in the context of multiple spousal claimants in heirship proceedings.").
[42] Dwyer v. Nolan, 40 Wash. 459, 460-61, 82 P. 746 (1905).
[43] 200 Wash. 365, 368, 93 P.2d 428 (1939). See also Dougherty v. Dougherty, 24 Wash.2d 811, 818, 167 P.2d 467 (1946) (the interlocutory order became a nullity in its entirety upon the death of one of the parties and the divorce action abated).
[44] 200 Wash. at 370, 93 P.2d 428.
[45] 200 Wash. at 372, 93 P.2d 428.
[46] 27 Wash.2d 877, 892, 181 P.2d 180 (1947).
[47] §74. Denial or Limitation of Relief

Except with regard to judgments referred to in §§ 65-66 and 69, relief from a judgment will be denied if:
(1) The person seeking relief failed to exercise reasonable diligence in discovering the ground for relief, or after such discovery was unreasonably dilatory in seeking relief; or
(2) The application for relief is barred by lapse of time; or
(3) Granting the relief will inequitably disturb an interest of reliance on the judgment. When such an interest can be adequately protected by giving the applicant limited or conditional relief, the relief will be shaped accordingly.
[48] 60 Wash.2d 163, 372 P.2d 538.
[49] 181 U.S. 175, 178-79, 21 S.Ct. 551, 45 L.Ed. 804 (1901).
[50] See 33 A.L.R.4th at 50-58.
[51] 60 Wash.2d at 166, 372 P.2d 538.
[52] RCW 5.60.030 Not excluded on grounds of interestExceptionTransaction with person since deceased. No person offered as a witness shall be excluded from giving evidence by reason of his or her interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his or her credibility: PROVIDED HOWEVER, That in any action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person ... then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased, incompetent or disabled person, or by any such minor under the age of fourteen years: PROVIDED FURTHER, That this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and have no other or further interest in the action.
[53] See O'Connor v. Slatter, 48 Wash. 493, 495, 93 P. 1078 (1908) ("Death has sealed the lips of one of the parties and the statute imposes the same silence upon the other.")
[54] See Bentzen v. Demmons, 68 Wash.App. 339, 344, 842 P.2d 1015 (1993) ("A person is a party in interest ... when [the person] stands to gain or lose in the action in question.").
[55] See In re Estate of Shaughnessy, 97 Wash.2d 652, 656, 648 P.2d 427 (1982) ([T]he test of a transaction with a decedent is whether the decedent, if living, could contradict the witness of his own knowledge. A transaction is the "doing or performing of some business ... or the management of any affair.").
[56] See Vogt v. Hovander, 27 Wash.App. 168, 616 P.2d 660 (1979); Thor v. McDearmid, 63 Wash.App. 193, 817 P.2d 1380 (1991).
[57] McGugart v. Brumback, 77 Wash.2d 441, 444-45, 463 P.2d 140 (1969).
[58] 61 Wash.2d 537, 379 P.2d 194 (1963).
[59] Id. at 542, 379 P.2d 194.
[60] See also Jacobs v. Brock, 73 Wash.2d 234, 238, 437 P.2d 920 (1968) (statements made by the deceased to third parties are not barred by the statute); People's National Bank v. National Bank of Commerce, 69 Wash.2d 682, 690, 420 P.2d 208 (1966) (proof of transactions with third parties are not barred by the statute).
[61] See Erickson v. Kerr, 125 Wash.2d 183, 188-89, 883 P.2d 313 (1994) (Testimony by third parties is not excluded under the statute; only parties in interest are precluded from testifying on their own behalf.).
[62] Amendment XIV Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
[63] Marley v. Department of Labor and Industries, 125 Wash.2d 533, 541, 886 P.2d 189 (1994).
[64] See In Re Marriage of Leslie, 112 Wash.2d 612, 619, 772 P.2d 1013 (1989) (motions to vacate on grounds that the judgment is void may be brought at any time after entry of judgment).
[65] The trial court stated that "a judgment is void if the rendering court lacked jurisdiction over the parties, or over the subject matter, or if due process requirements were not fulfilled." The court ruled that "the facts do not support a finding of lack of jurisdiction, and Wife # 1 does not allege a violation of due process rights. Therefore, the court shall not consider revising the Commissioner's ruling based on CR 60(b)(5)."
[66] 102 Wash.2d 721, 725-26, 684 P.2d 1275 (1984).
[67] 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
[68] Kennedy v. Sundown Speed Marine, Inc., 97 Wash.2d 544, 549, 647 P.2d 30, cert. denied, 459 U.S. 1037, 103 S.Ct. 449, 74 L.Ed.2d 603 (1982).
[69] 112 Wash.2d at 618, 772 P.2d 1013.
[70] Restatement of the Law 2d, Judgments 2d, § 74, cmt. a.
[71] 33 Wash.App. 178, 179, 653 P.2d 1329 (1982).
[72] 102 Wash.2d at 726, 684 P.2d 1275.
[73] In re Estate of Brenchley, 96 Wash. 223, 164 P. 913, 1917E L.R.A. 968 (1917).
[74] Id. at 224, 164 P. 913.
[75] Id. at 225-26, 164 P. 913.
[76] Id. at 226-27, 164 P. 913.
[77] 40 Wash. at 460, 82 P. 746.
[78] 125 Wash.2d at 188-89, 883 P.2d 313. See also Tegland, 5A Washington Practice, Evidence, § 212 ("[RCW 5.60.030] bars only the testimony of parties in interest and parties to the record. Other persons may testify on behalf of a party who is prohibited from testifying.").
[79] 339 U.S. at 314, 70 S.Ct. 652.
[80] 102 Wash.2d at 725, 684 P.2d 1275.
[81] See Marley v. Dept. of Labor and Industries, 125 Wash.2d 533, 539, 886 P.2d 189 (1994) (a judgment is void when the court lacks personal or subject matter jurisdiction).