IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 34158-5-III |
| THOMAS ELDON DILLON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| DOROTHY ANN CLARK, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — An estate appeals from the dismissal of the dissolution proceeding that had been in progress at the time of the husband's death. Precedent and policy compel us to affirm. The limited ability to attack an existing dissolution judgment decree after death is fundamentally different than obtaining a decree of dissolution after death.

FACTS

Thomas Dillon married Dorothy Clark in December 2008, some seven months after the couple had signed a prenuptial agreement. That agreement required Dillon's will to leave several items of Dillon's personal property (a house, vehicles titled in his name, any horses he owned) to Clark if they were still married at the time of his death.

Mr. Dillon learned that he was terminally ill with cancer and had only 30 days to live. He immediately instituted dissolution proceedings and soon thereafter changed his

will to disinherit Ms. Clark. Mr. Dillon, age 85, died May 12, 2015, 39 days after filing

the dissolution action. Mr. Dillon's daughter, Sandra Saffran, became the personal

representative of his estate.

Ms. Saffran promptly moved to substitute the estate in place of Mr. Dillon as the

petitioner in the dissolution action in order to continue that proceeding. A court

commissioner denied the motion to substitute and, instead, recognized that the dissolution

action had abated due to the death of Mr. Dillon. A superior court judge denied the

estate's motion to revise that ruling.

Ms. Saffran, on behalf of her father's estate, promptly appealed to this court.

ANALYSIS

The single issue in this case is whether the trial court erred in denying substitution

due to the abatement of the dissolution action. The trial court correctly applied this

state's long-standing precedent.

The Washington Supreme Court has long recognized "that it is the well-settled law

in this state that a divorce action abates on the death of either party." *Osborne v. Osborne*,

60 Wn.2d 163, 165-166, 372 P.2d 538 (1962). The abatement policy dates back to at least

*Dwyer v. Nolan*, 40 Wash. 459, 82 P. 746 (1905), *rev'd*, *In re Marriage of Himes*, 136

Wn.2d 707, 965 P.2d 1087 (1998). It has continued into the current dissolution act. *E.g.*,

*In re Marriage of Himes*, 136 Wn.2d at 726; *In re Marriage of Pratt*, 99 Wn.2d 905, 908,

665 P.2d 400 (1983); Luvern V. Rieke, *The Dissolution Act of 1973: From Status to Contract?*, 49 WASH. L. REV. 375, 418 (1974).

Nonetheless, relying on RCW 4.20.050[1] and seizing on the resolution of *Himes*, the estate argues that when other interests—such as ownership of property—continue to exist despite the death of one of the parties to the marriage, it is appropriate to continue the action. The estate mistakenly applies *Himes* outside of its context. There are circumstances where the abatement doctrine will not prohibit an attack on a *judgment*, but those exceptions do not authorize the filing or continuation of an action to resolve a status that has already ended.

*Himes* involved an action to resolve which of the decedent's wives was his widow. The Washington husband had divorced his first wife, who lived across the country in Pennsylvania, without actual notice to her, several years before his death. *Himes*, 136 Wn.2d at 711-712. He then remarried a year before he died. *Id.* at 712. The first wife found out about the marriage dissolution shortly before his death when the Navy terminated her benefits; she sought to vacate the judgment due to fraud. *Id.* at 713-714. The second wife argued that the dissolution had been abated by the husband's death, so there was nothing the first wife could attack. *Id.* at 718.

---

[1] "No action shall abate by the death, marriage, or other disability of the party, or by the transfer of any interest therein, *if the cause of action survives or continues*." (emphasis added).

*Himes* overruled the *Dwyer* principle that the death of a party to a divorce or dissolution "eliminates the subject matter of the action." *Id.* at 737. Instead, the court recognized that equitable principles could justify the surviving party attacking a fraudulent judgment. *Id.* at 736-737.

A few years later this court applied equitable principles recognized in *Himes* and declined to abate a dissolution appeal merely because one of the parties had died during the appeal. *In re Marriage of Fiorito*, 112 Wn. App. 657, 50 P.3d 298 (2002). There the husband had died after the wife had appealed the dissolution in order to challenge the property distribution and support obligations. *Id.* at 659-660. Citing *Himes*, this court permitted the attack on the nonfinal judgment, despite the death of the husband, due to "both equitable grounds and significant third party interests." *Id.* at 663. Specifically, this court relied on the statutory requirement that property be divided in a "just and equitable manner,"[2] and the interest of third parties—the couple's young children—in the child support order. *Id.* In other words, this court allowed an appeal to continue in order to permit resolution of judgment provisions unrelated to the marital status of the couple—the subject of the abatement doctrine.

Relying on *Himes* and *Fiorito*, the estate argues that it is equitable to permit the dissolution to proceed in the trial court because of the interest of the estate and third

---

[2] RCW 26.09.080.

4

parties (Mr. Dillon's heirs) in the distribution of his property. For multiple reasons, we

disagree.[3] First, in every earlier instance where equitable principles have permitted an

exception to the abatement doctrine, the case already had reached judgment. *See Himes*,

136 Wn.2d at 719-726 (discussing cases); *Fiorito*, 112 Wn. App. at 660-663 (same); 20

SCOTT HORENSTEIN, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY

LAW § 31:11, at 58 (2d ed. 2015) (summarizing case exceptions to abatement doctrine).

Second, permitting the dissolution to proceed would result in the absurd situation that

Ms. Clark would remain "married" to her late husband's estate, prohibiting her from

remarrying or otherwise managing her affairs as a single person would, despite the legal

impossibility of such a marriage under our statutes, merely because his heirs wished to

continue the marital status a bit longer.[4] *See* RCW 26.04.010 (defining marriage as a

contract between two individuals).

---

[3] Even if the dissolution had been permitted to proceed, nothing would preclude the trial court from exercising its discretion to award all of the separate and community property to Ms. Clark. Due to Mr. Dillon's death, he no longer would have need of that property vis-a-vis Ms. Clark, the only other party to the dissolution.

[4] "If the death of the plaintiff in this case had occurred before judgment, it will not be urged that there could have been a substitution of his executors to represent him in the prosecution of the case. Such a proposition, for manifest reasons, would not be entertained by a court for a moment." *Dwyer*, 40 Wash. at 461. Although *Himes* overruled the *Dwyer* holding that death abates *all* actions relating to a divorce, *Himes* still acknowledged and followed the same general abatement principle recognized in *Dwyer*.

This case is substantively identical to *Pratt*. There the court after a bench trial had issued its oral decision dissolving the marriage and assigning property. The parties reduced the judgment to writing and signed it, but had not presented the decree to the court before the husband died. 99 Wn.2d at 907. The trial court, over the objection of the wife, entered the judgment nunc pro tunc effective to a date when the husband had still been alive. *Id.* In light of the abatement doctrine and the fact that the husband's adult children were not parties to the dissolution action, there was no standing for the husband's counsel to seek entry of the decree since he did not represent a party. *Id.* at 908.

Similarly here, the death of Mr. Dillon abated this action. His estate could not continue the litigation because the marital status had already ended with Mr. Dillon's death. Nothing would be achieved by continuing the litigation to temporarily keep alive a fictitious marriage involving a dead spouse simply so it could end on a different date.[5]

---

[5] For a dissolution decree to have interrupted this prenuptial agreement, it would have to have been entered at a time when Mr. Dillon was still alive since the prenuptial agreement transferred property upon Mr. Dillon's death. That would be factually impossible now, and there also was no way to retroactively enter a decree of dissolution to an earlier time since Mr. Dillon died during the 90 day waiting period of the statute. For all of these reasons, the estate could not benefit by further litigation.

No. 34158-5-III
*In re Marriage of Dillon and Clark*

The trial court correctly denied the motion to substitute parties since the action had ended with the death of Mr. Dillon. Accordingly, the judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Lawrence-Berrey, J.

7