

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No.  35641-8-III |
| JUDITH K. TULLENERS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | PUBLISHED OPINION |
| | ) | |
| ANDRE J. TULLENERS, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Judith Tulleners appeals the trial court's division of property in the decree dissolving her marriage to Andre Tulleners.  After her appeal was filed, Andre Tulleners died, and his estate, which was substituted as respondent, has moved the court to find the action abated and dismiss the appeal.

We hold that because Judith is challenging only property provisions of a final decree, abatement does not apply.  On the merits, we conclude that the trial court's findings in support of two adjustments to the property division are inadequate for appellate review.  We reverse the trial court's total dollar awards of community property and remand for the entry of additional findings.

FACTS AND PROCEDURAL BACKGROUND

Judith Tulleners and Andre Tulleners were married for 18½ years, in what was a second marriage for both. When Judith filed for divorce in May 2016, she and Andre were both in their early 70s and retired. Both were living on social security and retirement assets.

At the divorce trial, Judith was able to provide a calculation from the administrator of her public employment retirement plan for the percentage of her pension payment that was community versus separate property. The administrator determined it was 67.6 percent separate property and 32.4 percent community property. Her retirement plan included a small defined contribution component, worth $11,872, to which she contributed before and during the marriage. The court characterized it as commingled and, therefore, community property.

Andre had worked for 32 years for Williams Companies, which provided a pension benefit and later a 401(k) plan. Contributions were made to both during the 8½ years of his marriage preceding his retirement in 2006. He cashed out his pension benefit upon retirement. At the time of the divorce trial, he held what remained of that lump sum payment and his 401(k) in two individual retirement accounts (IRAs) and an annuity. At the time of the parties' separation, the combined value of those assets was $767,924.

Andre offered virtually no evidence of the contributions made toward his retirement benefits during the 8½ employed years of the marriage. He offered evidence that at the time the dissolution of his first marriage became final—which was six months before his marriage to Judith—his 401(k) account was worth $375,000, half of which ($187,500) was awarded to him in that earlier divorce. He offered evidence that when he retired in 2006, the value of the account was $357,017.

It was Judith's position that much of the $357,017 value at retirement was community property. She testified that when Williams Companies' stock crashed in the early 2000s, her husband told her that the value of his 401(k) had declined to $40,000. She claims that he asked, and she agreed, that they would rely primarily on her income to pay expenses so that he could maximize contributions to rebuild his 401(k). Although Mr. Tulleners denied at trial that he ever told Judith his 401(k) account had declined in value to $40,000, he acknowledged that it did decline because of problems with its investment in Williams Communications stock. He also agreed that he told Judith he wanted to maximize his contributions to the account, and that he did maximize his contributions to the 401(k) account during the marriage.

Mr. Tulleners provided evidence that when he retired in May 2006, the lump sum he received in lieu of a pension benefit was $514,106. He rolled that

amount into one of two IRAs, later moving assets back and forth between the IRAs. In 2013, he used $300,000 of the IRA funds to purchase an annuity.

The trial court's decision explaining its division of assets stated that Mr. Tulleners offered "no evidence . . . as to the structure of [the] pension, such as the amounts or timing of the contributions by Mr. Tulleners' employer." Clerk's Papers at 87. Mr. Tulleners also offered "no documentation as to how and when contributions were made to [the 401(k)] account between May 1997 and May 2006 when he took the funds upon retirement." *Id.* at 87-88. Because there was no tracing done by Mr. Tulleners, the trial court characterized his IRAs and annuity as entirely community property.

The court placed the following values on the parties' community and separate property:

| | |
|---|---|
| Community property: | $1,019,914, plus a 32.4 percent interest in Judith's pension payments. ($767,924 in value of the community property comprised investment assets acquired with Andre's part separate-part community pension payout and 401(k) account) |
| Judith's separate property: | $251,730 plus her 67.6 percent separate property interest in her pension payments |
| Andre's separate property: | $20,000 |

4

No. 35641-8-III
*In re Marriage of Tulleners*

Judith's separate property consisted of assets inherited from her mother that she had maintained as separate. The nature of Andre's separate property is not clear, but the characterization and values of these separate properties is not challenged on appeal.

Had the trial court divided the community property equally, each party would have received approximately $510,000. Had it combined all of the separate and community property for which it had values and divided the total equally, each party would have received $645,822. Instead, in a memorandum opinion, the court awarded the assets in the following manner:

|  | Community property | Separate property |
|---|---|---|
| Andre | $718,172 plus a QDRO[1] addressing the community interest in Judith's pension payments | $20,000 |
| Judith | $301,742, plus a QDRO addressing the community property interest in her pension payments | $251,730 plus the 67.6 percent separate property interest in her pension payments |

*See* Report of Proceedings (RP)[2] at 293.

---

[1] Qualified domestic relations order. *See* 29 U.S.C.A. § 1056(d)(3)(A).

[2] The report of proceedings contains a pagination error. The pages numbered 167 through 172 are followed by another six pages numbered 167 through 172. For all references beginning with the second page numbered 167, our citations are to the page numbers in their actual sequence rather than the numbers affixed by the court reporter.

5

Judith challenged the significant disparity in her and Andre's community

property awards. The trial court addressed her objection at the presentment

hearing on the final papers. It pointed out that the total community and separate

property awarded to Judith was $553,472, approximately $184,500 less than the

$738,172 total of community and separate property it awarded to Andre, and then

explained:

> [Judith's public employment pension] wasn't valued. And I
> appreciate that when we split something exactly in half on a pension,
> it doesn't really matter what we value. In this case it had to matter
> to me, if you will, because [Judith] was receiving . . . roughly 68
> percent of that pension as a separate property asset. And so there is
> a value to that. And then she received half the community. And
> there is a value to that. So ultimately she received 82, 83 percent.
> . . . .
> Secondly, although I characterized [Andre's] pension, which
> is a two-part item, the pension and his 401k that he had, or the
> defined benefit and defined contributions portion of his pension as
> community, because [Andre] failed to trace appropriately, and I thus
> divided it.
> I did have in mind that the evidence in my mind was clear
> that [Andre] walked away from his prior marriage with $187,000
> sitting in what I'll call the 401k side of his pension.
> And you'll notice again the difference here is about 185
> between the two estates.
> So essentially I took that into consideration that he couldn't
> tell me if there was any interest earned on it, he couldn't trace it
> back. The accumulations after that, who knows. But I considered
> the fact that he had walked into the marriage with—setting aside the
> defined benefit side because we didn't have tracing documents
> sufficient on that—setting aside that, this to me it was clear he
> walked into the marriage with a significant asset, and I gave him
> some credit for that. Obviously I'm not doing a dollar for dollar or
> that's not the point, but I gave him some credit for total equity.

RP at 295-97.

The final papers were entered in late September 2017. Judith timely appealed.

Following commencement of the appeal, Judith learned that Andre had been diagnosed with late stage amyotrophic lateral sclerosis (ALS). No evidence had been presented at trial that Andre had health issues. Judith moved to vacate the decree. The trial court denied the motion.

Andre died after the appeal was fully briefed, and Patrick Tulleners, his son from his first marriage, was appointed personal representative and substituted as the respondent. He filed a motion asking this court to determine whether abatement applies since no third party interests were involved in the dissolution, relying on *In re Marriage of Fiorito*, 112 Wn. App. 657, 660-63, 50 P.3d 298 (2002). We requested supplemental briefing on the issue of abatement. Decision on the motion was referred to the panel.

## ANALYSIS

I.    ABATEMENT DOES NOT APPLY

Relying on *Fiorito*, the parties assume that if we find abatement to apply as a result of Andre's death, appellate review is foreclosed and the trial court's findings, conclusions, and decree will be the final word. They assume that

7

abatement will apply unless we find either equitable grounds for review or that third party interests were resolved in the action below. Both assumptions misunderstand *In re Marriage of Himes*, 136 Wn.2d 707, 721, 965 P.2d 1087 (1998), and the earlier case law that it overruled.

Confusion arises because the decisions on which the parties rely come up in two different contexts. Most of the cases involve a motion or independent action to vacate a final judgment in a divorce case after one of the parties to the marriage has died. In the early decision in *Dwyer v. Nolan*, our Supreme Court held that a final judgment in such a case cannot be challenged because

> there are no proper parties to this proceeding, and that, in the nature of things, the plaintiff having died, the question of divorce cannot be relitigated. It will not be gainsaid that an action for divorce is a purely personal action. Nothing is sought to be affected but the marital status of the husband and wife. The distribution of property in such an action is incidental, and it is clearly incontestable that, upon the death of either party, whether before or after the decree, the subject of the controversy is eliminated.

40 Wash. 459, 460-61, 82 P. 746 (1905). In such cases, an appeal of the divorce decree is not at issue.

*Dwyer*'s holding was a distinctly minority view. The overwhelmingly majority view was that circumstances can exist where a challenge to a divorce decree should be entertained even if a party to the marriage has died. *Himes*, 136 Wn.2d at 721 & n.38.

8

After first questioning the wisdom of *Dwyer* in *Osborne v. Osborne*, 60

Wn.2d 163, 166, 372 P.2d 538 (1962), the Washington Supreme Court overruled it

in *Himes*, holding that courts should decide on equitable grounds whether to

vacate a dissolution decree after the death of one of the parties.  136 Wn.2d at 721.

Judith and Andre's estate also rely on cases from a separate and more

directly applicable context: cases in which a party unhappy with a property

division appeals, one of the parties to the divorce then dies, and the appellant

argues that abatement upon death has rendered the property division a nullity.

Cases eventually overruled by *Himes* did not hold that if abatement applies, the

decree stands, and the appeal is dismissed.  They held that the divorce decree itself

becomes a nullity.  In the leading case of *McPherson v. McPherson*, 200 Wash.

365, 93 P.2d 428 (1939), the respondent—the executor for the estate of a wife who

died during the appeal—argued that her death did not abate the trial court's

property division, which was favorable to her, and the appellate court could review

and affirm it.  The court observed:

> There is much authority from other jurisdictions to sustain
> this contention of respondent, but we are of the opinion that, under
> our decisions, the interlocutory decree, in its entirety, abates and
> becomes a nullity upon the death of one of the parties, whether
> before or after the interlocutory decree is entered.

*Id.* at 369.  The court cited to *Dwyer*'s holding that the distribution of property in a

divorce action is "'incidental.'"  *Id.* (quoting *Dwyer*, 40 Wash. at 460).  It did

9

acknowledge that in *Masterson v. Ogden*, 78 Wash. 644, 139 P. 654 (1914), the court had reviewed property provisions of a decree notwithstanding the death of the husband during the appeal, but the majority viewed that decision as "determining the rights of third parties." 200 Wash. at 371-72. *But cf. McPherson*, 200 Wash. at 373 (Blake, C.J., dissenting) (reading *Masterson* as holding that an interlocutory order is final and conclusive insofar as it affects the division of property).

At the time *McPherson* was decided, a trial court's initial decree in a divorce action was interlocutory, not final. A final decree could not be entered until the passage of six months or the conclusion of an appeal, whichever occurred later. *See, e.g.*, *In re Estate of Martin*, 127 Wash. 44, 47-48, 219 P. 838 (1923) (discussing REM. COMP. STAT. § 988). It is possible that the interlocutory character of the decree explains the *McPherson* court's reason for treating the entire divorce action as abated.

The law has changed, of course; divorce decrees are now entered on a final basis and finality of the dissolution can be delayed only if an appeal challenges the finding that the marriage is irretrievably broken. RCW 26.09.150(1); and *see, e.g.*, *In re Marriage of Moody*, 137 Wn.2d 979, 989, 976 P.2d 1240 (1999). No decision following the statutory change addresses whether *McPherson* applies to decrees on appeal that are final rather than interlocutory. Some have read pre-

*Himes* Washington case law as holding that the death of a party during *any* appeal

results in abatement unless the interests of third parties are affected, however. *See*

Francis M. Dougherty, Annotation, *Effect of Death of Party to Divorce*

*Proceeding Pending Appeal or Time Allowed for Appeal*, 33 A.L.R.4th 47, 51

(1984).

Fortunately, in overruling *Dwyer* as it related to an action to vacate a

divorce decree, the *Himes* court also addressed *Dwyer*'s influence on Washington

cases dealing with abatement. *Himes*, 136 Wn.2d at 725-26. *Himes* adopted the

majority rule that the death of a party to an appeal in a divorce action does not

abate the property provisions of a decree. *Id.* (citing *Bell v. Bell*, 181 U.S. 175,

178-89, 21 S. Ct. 551, 45 L. Ed. 804 (1901)).

In light of *Himes*, Judith is not required, in order to avoid abatement, to

satisfy us that equitable considerations or third party interests are present.

Equitable considerations only come into play when an independent action is

brought to vacate a divorce decree, as was the case in *Himes*. "Third party

interests" were an exception to the application of abatement in cases like

*McPherson*, which *Himes* overruled. All Judith needs to demonstrate is that she is

challenging the property provisions of a final divorce decree. She is. Abatement

does not apply.

11

II.    ADDITIONAL FINDINGS ARE NEEDED FOR APPELLATE REVIEW OF THE TRIAL
       COURT'S AWARD OF COMMUNITY PROPERTY

A trial court in a dissolution proceeding is to "make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors." RCW 26.09.080. Factors identified by the statute as relevant include the nature and extent of the community and separate property, the duration of the marriage, and the economic circumstances of the parties. *Id.*

An asset is separate property if acquired before marriage, acquired during marriage by gift or inheritance, acquired during marriage with the traceable proceeds of separate property, or, in the case of earnings or accumulations, acquired during permanent separation. *In re Marriage of White*, 105 Wn. App. 545, 550, 20 P.3d 481 (2001). Separate property brought into the marriage will retain its separate character as long as it can be traced or identified. *In re Marriage of Schwarz*, 192 Wn. App. 180, 190, 368 P.3d 173 (2016). If community and separate funds are so commingled that they cannot be distinguished or apportioned, the entire amount is rendered community property. *In re Marriage of Pearson-Maines*, 70 Wn. App. 860, 866, 855 P.2d 1210 (1993).

A trial court has considerable discretion in making a property division, and "will be reversed on appeal only if there is a manifest abuse of discretion." *In re*

*Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005).  "'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'"  *Id.* (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)).

For appellate review to be possible, a trial court's findings of fact must declare the ultimate facts that justify its conclusions; if they do not, an appellant is entitled to have the cause remanded so that findings adequate for review can be made.  *Phelps v. Phelps*, 2 Wn.2d 272, 276, 97 P.2d 1080 (1940).

Judith and Andre were only one year apart in age at the time of divorce and both were fully retired, so earning capacity was not an issue.  The only asset not before the court for disposition was the parties' social security benefits, and Andre received more than Judith: he was receiving $1,587 per month, while Judith received $1,101.  While Judith presented evidence of her earlier cancer and eye surgeries, the court was not presented with evidence that either party had any special financial need; the parties appear to have had equivalent needs for income during retirement.  The only factors identified by the trial court as supporting its disproportionate award of community property was its consideration of Andre's untraced separate property interest in his retirement assets and Judith's separate property interest in her pension for which no present value evidence was offered.

Our informed guess from the trial court's oral statements is that it was trying to divide the property equally after recognizing that Andre's commingled retirement assets had a substantial separate property origin, and after imputing to Judith an estimated value of her separate property interest in her pension. Both were legitimate considerations, as long as the values used by the court were supported by the evidence.

Awarding Andre a disparate share of his retirement assets finds conceptual support in *In re Marriage of Nuss*, in which this court held that even "the origin of community property as one party's separate property may . . . be considered in appropriate cases as a reason for awarding all or a disparate share thereof to that party." 65 Wn. App. 334, 341, 828 P.2d 627 (1992). Significantly, however, the asset at issue in *Nuss* was not characterized as community property because of commingling. It was a home that the husband brought to a short-term marriage and quitclaimed to the community in connection with a refinancing. The trial court was presented with an unchallenged value for the total equity in the home and made an unchallenged finding that "no more than half the present value of the property, and probably less than that, was the result of community effort and increase in value since it became community property." *Id.* at 340. In other words, in giving the husband a credit to account for the home's separate property

14

origin, the *Nuss* court had reliable value and allocation information, which it viewed in the light most favorable to the wife.

In this case, some *Nuss*-type credit to Andre for the value of the retirement assets he brought into the marriage would be within the trial court's discretion. But when the reason for characterizing the property as community is because Andre did not trace his separate property interest, he cannot be rewarded for failing to trace. All credible evidence must be viewed in the light most favorable to Judith, and reasonable inferences must support a finding that the value Andre brought into the marriage, to the extent that value was preserved during the marriage,[3] was *at least if not more* than the amount of credit given.

To be clear, Andre's retirement assets, because untraceably commingled, are conclusively presumed to be community property, as the trial court recognized. What is within the trial court's discretion is to make a disparate award of those assets to Andre if it is possible to determine a minimum value of those assets that was brought into the marriage and preserved.

Attributing a value to Judith's separate property interest in her pension payments was also within the trial court's discretion. But the value must be supported by the evidence and the fact that Judith did not provide evidence of a

---

[3] Any losses or declines in value during the marriage must be taken into account.

15

reasonable present value cannot be held against her where the court did not request evidence of such a value from the parties. Judith proposed to divide the community interest on a percentage, as-received basis, and provided the necessary evidence. "An award of pension rights on a percentage, as-received basis is . . . encouraged" because it "avoids difficult valuation problems, shares the risks inherent in deferred receipt of income, and provides a source of income to both spouses." *In re Marriage of Bulicek*, 59 Wn. App. 630, 638, 800 P.2d 394 (1990).

The problem in this case with the trial court's award of community property is that it did not make a finding of the amount of Andre's retirement assets for which it was giving him a *Nuss*-type credit, and it did not make a finding of the value it was imputing to Judith's separate property interest in her pension plan. At most, we can guess at the values the trial court had in mind. If the $738,172 in community and separate assets it distributed to Andre was intended to be one-half of the total value of the parties' community and separate assets—not just the community and separate property for which it had values, but adding an imputed value for Judith's separate property interest in her pension payments—then we can extrapolate that the trial court gave Andre a 54 percent credit in his commingled retirement assets ($416,430) before dividing the remaining $351,494 community property value between the parties. We can extrapolate that it treated Judith's

16

separate property interest in her pension plan as having a value of $184,700. (Our extrapolation of these amounts is explained in the appendix to this opinion.)

If we were certain this is what the court intended, we could entertain a challenge from Judith that the evidence—viewed in the light most favorable to her—does not support a finding that the value of Andre's retirement assets brought into the marriage and preserved is at least $416,430. She would be able to challenge the court's attribution of a value of $184,700 to her separate property payment stream from her pension plan.

Judith is unable to challenge the property award effectively, however, because we do not know if these are the values assumed by the trial court, given the incompleteness of its findings. If a *Nuss*-type credit to Andre is a basis for the disproportionate award, Judith needs a finding on the amount of that credit; if a present value for Judith's separate property interest in her pension plan figures is a basis for the disproportionate award, she needs a finding on that imputed value as well. She is entitled to findings on those matters so that she can assign error if she believes they are not supported by the record. We need findings on those matters so that we can fairly consider her appeal.

We reverse the trial court's total dollar awards of community property to Andre and Judith and remand for the entry of additional findings in support of

17

No. 35641-8-III
*In re Marriage of Tulleners*

whatever award is made. The trial court will determine what further proceedings

to conduct, if any, before entering additional findings.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Fearing, J.

APPENDIX

If the $738,172 in community and separate assets the trial court distributed to Andre was intended to be one-half of the total value of the parties' community and separate assets—not just the community and separate property for which it had values, but adding an imputed value for Judith's separate property interest in her pension payments—then, using that and other values and amounts from the record (unshaded), we can calculate the value imputed to Judith's separate property payment stream from her pension plan (JSP), the amounts of Andre's commingled retirement assets to which the court found Andre and Judith to be entitled (AE and JE), and the portions of Andre's commingled retirement assets that the court found to be Andre's separate property (ASP) and community property (CP).

| Asset | Total value | To Andre | To Judith |
|---|---|---|---|
| Community property other than Andre's commingled retirement assets ($1,019,914 – $767,924) | $251,990 | $125,995 | $125,995 |
| Andre's commingled retirement assets | $767,924 | $592,177[c] | $175,747[c] |
| | | Meaning the commingled assets were treated as 54% Andre's separate property and 46% community property[d] | |
| Andre's traceable separate property | $20,000 | $20,000 | |
| Judith's traceable separate property | $251,730 | | $251,730 |
| Assumed value of Judith's separate property interest in her pension | $184,700[b] | | $184,700[b] |
| TOTAL: | $1,476,344[a] | $738,172 | $738,172 |

[a]     If $738,172 is intended to be one-half the total value of the couple's assets, then total value = 2 x $738,172, or <u>$1,476,344</u>.

[b]     $1,291,644 is the total value of the couple's assets *other than* the imputed value for Judith's separate property interest in her pension payments (JSP), so JSP = $1,476,344 – $1,291,644, or <u>$184,700.</u>

[c]     $738,172 is Andre's total property award, made up of $125,995 + $20,000 + AE (Andre's entitlement from his commingled retirement assets). AE then equals <u>$592,177</u> ($738,172 – ($125,995 + $20,000)). And since AE is $592,177, JE (Judith's entitlement from Andre's commingled retirement assets) is $767,924 – $592,177, or <u>$175,747</u>.

[d]     If the objective is that Andre's entitlement from the commingled retirement assets (AE) is his entire separate property interest in those assets (ASP) plus one-half the community's interest in those assets (CP), then $592,177 (AE) = ASP + ½ CP, so $592,177 – ½ CP = ASP.

We know that the total commingled value ($767,924) = ASP + CP, so another thing we know about ASP is that it equals $767,924 – CP.

Those equivalences to ASP must also be equal, so

$767,924 – CP = $592,177 – ½ CP;
$767,924 – $592,177, or $175,747 = ½ CP;
<u>$351,494</u> = CP; and
ASP will be <u>$416,430</u> ($767,924 – $351,494)

As a percentage of total value, ASP is <u>54%</u>, rounded ($416,430 ÷ $767,924) and CP is <u>46%</u>, rounded ($351,494 ÷ $767,924).